[No. 14198.    Department Two. — December 13, 1892.]

## BANK OF BRITISH NORTH AMERICA, Respondent, *v.* ALASKA IMPROVEMENT COMPANY, Appellant.

Banks — Sworn Statements — Condition Precedent to Suit — Construction of Statute — Palpable Non-compliance. — The act of the legislature of April 1, 1876 (Stats. 1875-76, p. 729), requiring all banking corporations to publish and record semi-annual sworn statements of their capital stock actually paid in, and showing the actual condition of their assets and liabilities, and where the assets are situated, and prohibiting them, upon a failure to comply with its provisions, from maintaining or prosecuting any action or proceeding in any of the courts of this state until such statements are filed, is penal in its nature, and should receive a liberal interpretation in favor of the bank, but the court is not authorized to refuse to enforce the statute, where the failure to comply with its provisions is palpable and material.

Id. — Form of Statements — Uniting Two Statements — Affidavit. — The statute contemplates two statements, but does not prescribe their form, and it is immaterial in what form the facts required are stated. It seems that the two may be incorporated in one, and that a defect in the form of the tabulated statement may be cured by a proper affidavit showing the requisite facts; but if neither the statements themselves nor the affidavit attached show the requisite facts, the statements are insufficient.

Id. — Insufficient Statement of Capital and Assets. — A semi-annual statement of a banking corporation, which mentions, under the head of liabilities, a sum of money as "Capital," and under the head of assets a sum specified as "Bills receivable, and other securities," and which does not show, by proper averments in the statement or in the affidavit annexed thereto, that the "capital" mentioned in the statement has been actually paid in money in good faith into the treasury of the bank, and that the assets there shown are of the value there stated, and are situated at a place or places named, is not a substantial compliance with the statute.

ID. — INSUFFICIENT AFFIDAVIT BY MANAGING AGENT — COPY OF STATE-
MENT. — An affidavit by a managing agent of a bank, annexed to the
semi-annual statements of the bank, which contains no intimation that
any of the reports or accounts which are combined in the general state-
ment were made under oath by any one, or that the general statement
was the sworn statement of any officer or employee of the bank, and
which does not contain a statement that he swears that he believes it to
be a true or correct statement, but only that he swears that it is a "true
copy of the last statement received," is not sufficient to render the
statements "sworn statements," as required by the statute.

ID. — FOREIGN BANKING COMPANY — INABILITY TO COMPLY WITH STATUTE
— EXCEPTION — POWER OF COURT. — The fact that a banking company
doing business in this state has its principal place of business in a for-
eign country, and that the agent in this state could not personally know
the truth of all matters required to be embodied in its semi-annual state-
ments, is not sufficient to relieve it from such compliance with the stat-
ute as is within its power; and if it be said that it is not possible for it
to comply substantially with the requirements of the statute, that would
be conclusive against its right to maintain an action in the courts of this
state.   It is not within the power of the court to make an exception,
where none is made in the statute.

ID. — PERSONAL DISABILITY TO SUE — TRANSACTION PERFORMED OUT OF
STATE — LEGALITY OF BUSINESS. — The penalty imposed by the act of
April 1, 1876, for a failure of a banking company doing business in this
state to comply with the statute, affects the company by creating a per-
sonal disability to maintain or prosecute any action in this state, and this
disability is universal, and applies not only to those actions which are
brought upon or concerning a banking transaction done or performed
by it within this state, but also to any action brought in this state con-
cerning any transaction done or performed out of the state, though the
disability to sue in no wise affects the legality of the business transacted.

ID. — TIME OF CONDITION OF BANK — SUBSTANTIAL COMPLIANCE. — The
statute contemplates that the statements should show the condition of
the bank as of a time immediately or shortly preceding the publication
of the statement; but where an exact compliance with the statute as to
the time of publication is impossible, it seems that a publication and re-
cording as soon thereafter as the same could be reasonably done would
be a substantial compliance, and relieve the corporation from the penalty
imposed by the statute.

APPEAL from a judgment of the Superior Court of
the city and county of San Francisco, and from an order
denying a new trial.

The facts are stated in the opinion.

*Daniel Titus*, for Appellant.

The plaintiff has not legal capacity to maintain this
action, as it has failed to publish and record the required

statements. (*Bank of British North America* v. *Cahn,* 79
Cal. 463. See also *Cameron* v. *Seaman,* 69 N. Y. 396, 400;
25 Am. Rep. 212; *Vincent* v. *Sands,* 42 How. Pr. 235;
*Whitney Arms Co.* v. *Barlow,* 6 Jones & S. 555, 562; *Gil-
derslee* v. *Dickson,* 6 Daly, 76; *People* v. *Buffalo Stone etc.
Co.,* 131 N. Y. 140, 145.) The attempted verification in
this case was insufficient, as perjury could not be as-
signed if the statements were untrue. (*Whitney Arms
Co.* v. *Barlow,* 63 N. Y. 66; 20 Am. Rep. 504.)

*Carter P. Pomeroy,* and *Smith & Pomeroy,* for Respond-
ent.

The penalties against suing imposed by the act of
1876 are not applicable to the present case, and should
not be so construed, for the reason that the "banking
business" done by the plaintiff, to wit, the purchase of
the bills of exchange, was done in a foreign country.
(*Bank of British North America* v. *Barling,* 44 Fed. Rep:
641; *Barling* v. *Bank of British North America,* 50 Fed.
Rep. 260.) The act in question is highly penal, and
should be strictly construed against the incurring of the
penalty. (See Sedgwick on Statutory Construction, 324
et seq.; Dwarris on Statutes, 635; *Wood* v. *Meeks,* 7 Lea,
40; *Garrison* v. *Howe,* 17 N. Y. 466; *Bonnell* v. *Griswold,*
80 N. Y. 128; *Gray* v. *Coffin,* 9 Cush. 199; *Steadman*
v. *Eveleth,* 6 Met. 114; *Cabre* v. *McClure,* 29 Mo. 371;
*Whitaker* v. *Masterton,* 106 N. Y. 277; *Whitney Arms Co.*
v. *Barlow,* 63 N. Y. 62; 20 Am. Rep. 504; 68 N. Y. 34;
*Derrickson* v. *Smith,* 27 N. J. L. 166; *Pier* v. *Hanmore,*
86 N. Y. 95.) Being penal, the statute should not be
construed so as to give it an extraterritorial effect. (See
*Derrickson* v. *Smith,* 27 N. J. L. 166; *Wood* v. *Meeks,* 7
Lea, 40.) Even conceding that the statute applies to
this case, still the statements filed and recorded are sub-
stantially in compliance with the statute, and are there-
fore sufficient to enable the plaintiff to maintain this
action. (See *Whitney Arms Co.* v. *Barlow,* 63 N. Y. 66;
20 Am. Rep. 504; and cases above cited.) The verifica-
tion need not be in any particular form, nor unqualified

or positive, or show that the subject-matters affirmed to are within the knowledge of the affiant. (*Glen Falls Paper Co.* v. *White*, 18 Hun, 215; *Bonnell* v. *Griswold*, 80 N. Y. 129.)

HAYNES, C.—Appeal from the judgment and an order denying defendant's motion for a new trial.

The action is upon certain bills of exchange drawn by the defendant upon William T. Coleman & Co., payable to the order of defendant sixty days after date, and by the defendant indorsed and delivered to said William T. Coleman & Co., who, before maturity, sold and delivered the same to plaintiff. These bills were afterwards duly accepted by William T. Coleman & Co., who failed to pay them at maturity, of all which the defendant was notified.

Defendant's answer, in addition to denials not necessary to be noticed, alleged that after the defendant indorsed said bills of exchange, said William T. Coleman & Co., the drawee, paid the same to defendant, whereby the defendant was released and discharged from liability thereon as drawer and indorser; and for a further defense, alleged that plaintiff for more than two years last past was a banking corporation doing business in the city and county of San Francisco, state of California, and during all that time was and still is subject to an act of the legislature of that state, approved April 1, 1876, concerning corporations and persons engaged in the business of banking; that plaintiffs had not complied with certain provisions of that act (hereinafter mentioned), and because thereof was prohibited from bringing or maintaining any action in the courts of this state.

The court found that all the allegations of the complaint were true, and as to the answer found all the allegations untrue, except that plaintiff had been doing business as a banking corporation for more than two years at the place alleged, and that there were many newspapers of general circulation published in the city of San Francisco.

The act referred to (Stats. 1875–76, p. 729) requires, —
1. That two statements shall be published and recorded
each year, in January and July; 2. That one of such
statements shall state the amount of capital stock actu-
ally paid in, and that nothing shall be deemed capital
actually paid in except money *bona fide* paid into the
treasury of such bank; 3. The other of said statements
shall show the actual condition and value of its assets
and liabilities, and where the assets are situated. The
statements are required to be "sworn statements," veri-
fied by certain officers in case of a home corporation,
and in case of a foreign corporation "the statements
herein provided for shall be verified by the agent or
manager of the business resident in this state."

These statements are required to be recorded in the
office of the county recorder, one in a book entitled
"Statements of Banking Capital," and the other in a
book entitled "Statements of Banking Assets."

The third section of this act is as follows:—

"Sec. 3.  Directors making a false statement shall be
jointly and severally liable to any person hereafter dealing
with such corporation to the full extent of such dealing;
and *no corporation,* and no person or persons, *who fail to
comply* with the provisions, or *any of the provisions,* of this
law *shall maintain or prosecute any action or proceeding* in
any of the courts of this state *until they shall have first
duly filed* the statements herein provided for, *and in all
other respects complied* with the provisions of this law; nor
shall any assignee or assignees of any such corporation
or person whose assignment shall be made subsequent
to any such failure to comply with the provisions of this
law maintain any action or proceeding in any court of
this state *until his or their assignor or assignors shall have
first duly complied with the provisions of this law.*"

Appellant contends that the plaintiff has not complied
with the requirements of said statute in several particu-
lars: 1. That the statements published and recorded by
the plaintiff do not show the amount of the capital ac-
tually paid in money, and in good faith, into the bank;

2. That the statements published and recorded by the plaintiff were not "sworn statements"; 3. That if the statements should be held sufficient as to form and substance, that they do not show the condition of the bank, in the particulars required, for the six months immediately preceding the publication and recording, but of a period ending more than six months prior thereto.

1. The statute contemplates two statements; but we are not prepared to hold that if the one statement contained all the particulars required by the statute it would not be sufficient, inasmuch as the statement was recorded in each of the books, and the information required could be ascertained from either. We think, however, that the statements put in evidence by the plaintiff were not a substantial compliance with the statute. These statements, omitting the figures, were: Under the head of liabilities: "Capital" $—, "Circulation" $—, "Deposits" $—, "Bills payable and other liabilities" $—, "Undivided net profits" $—, "Total" $—; and under the head "Assets": "Specie on hand and cash at banker's" $—, "Bills receivable and other securities" $—, "Investments" $—, "Bank premises" $—, "Total" $—, — a sum equaling the liabilities.

The statute requires a statement of the amount of capital actually paid in in money, and thus excludes subscribed capital not paid, and all securities of every description which may be held to represent capital. So in regard to the statement of assets, the statute requires the "value" to be stated, and where the assets are situated. Bills receivable, for example, are never charged up to profit and loss by any banker or business man until collection is hopeless; but until that time they appear on every trial balance as assets at their face value. However that may be, the legislature required a *sworn* statement of the capital actually paid in, and the *value* of the assets, and where the assets were; and we must either hold that "Capital," in the statement, means only "capital actually paid in money," and that the words "Bills receivable, and other securities," of themselves,

XCVII. CAL.—3

amount to an averment that they are of the *actual value*
there stated, or we must hold the statement materially
deficient.   We do not say that this defect in the tabu-
lated statement may not be cured by proper averments
in an affidavit attached thereto, showing that the " capi-
tal " mentioned in the statement has been actually paid
in money in good faith into the treasury of the bank,
and that the assets there. shown are of the value there
stated, and are situated at a place or places named.   The
statute does not prescribe the form of these statements,
and it is immaterial in what form the facts required are
stated.

2. But these tabulated statements are not only not
aided by the affidavit attached thereto, but are not
" sworn statements."   The affidavit is made by the
managing agent at San Francisco, and is as follows: —

" William Lawson, being duly sworn, says he is the
managing agent at San Francisco of the above-named
bank, and that said bank has no cashier or secretary at
such agency; that said bank is incorporated under the
laws of Great Britain, has its principal place of busi-
ness in the city of London, and carries on its business
there, and through numerous branches and agencies
in Canada, the city of New York, and this city; and
further, that the accounts of the San Francisco agency
are made up to the 30th June and 31st December in
each year, and forwarded to the London office, where
they are consolidated with the other accounts of the
bank, and a general statement is prepared showing the
entire assets and liabilities, which is sent to this office;
that such general statements reach San Francisco about
the middle of August and February in each year; that
the foregoing is a correct copy of the last statement
received.                                 W. Lawson.

" Subscribed and sworn to before me this fifth day of
July, 1888.

[Seal]                            " James L. King,
                                     " Notary Public."

It is nowhere intimated in this affidavit that any of

the reports or accounts which are combined in the general statement were made under oath by any one, or that the general statement to which he attached his affidavit was the sworn statement of any officer or employee of the bank, nor does he swear that he believes it to be a true or correct statement; he only swears that it is "a true *copy* of the last statement received." If the capital of the bank at the time this statement was made had been *nil*, and it had not been possessed of a dollar of available assets, and the agent had known it at the time the oath in question was taken, he could not be convicted of perjury.

In *Whitney Arms Co.* v. *Barlow*, 63 N. Y. 66, 20 Am. Rep. 504, the court had under consideration a similar statute, requiring the trustees of manufacturing corporations at stated times to publish and file a verified report, " which shall state the amount of capital and of the proportion actually paid in, and the amount of its existing debts." It was there said: "The reports should in all essential particulars comply with these statutes. The facts need not necessarily be stated with technical or grammatical precision and accuracy, but they must substantially appear and be verified by the oath of the president and a majority of the trustees, and so distinctly stated that if untrue perjury could be assigned, or an action maintained by any one sustaining legal injury from the misstatement."

It is true, as said by counsel for respondent, that our statute is in some sense penal, and should receive a liberal interpretation; but the fact that a statute is penal does not authorize the court to refuse to enforce it where the failure to comply with its provisions is, as in this case, palpable and material.

The fact that the San Francisco agent of the plaintiff could not personally know the truth of all the matters required to be embodied in the statements is not sufficient to relieve the plaintiff from such compliance as was within its power; and if it be said that it is not possible for the plaintiff to comply substantially with

the requirements of the statute, that would be conclusive against its right to maintain the action, as it is not in the power of the court to make an exception where none is made in the statute. As to the wisdom of this enactment, either as to its general purpose or the mode of its enforcement, we are not called upon to speak. The power of the legislature to make the enactment is not questioned, and our whole duty is to determine whether or not the law has been complied with, and if it has not, to further determine the effect of such non-compliance upon the right of the plaintiff to maintain this action.

In *Bank of British North America* v. *Cahn*, 79 Cal. 463, this court held that a failure on the part of the plaintiff to comply with the provisions of the act in question was a sufficient defense to the action. Counsel for respondent contends, however, that in the case above cited it was held that the publication and recording of these documents is mainly for the benefit of those locally interested, by giving information to them through local publication and recording, and that therefore the statute was not intended to have an extraterritorial effect; that in this case the bills of exchange sued upon were purchased by plaintiff at its agency at Vancouver, in British Columbia, and that the "banking business," so far as these bills were concerned, was done in a foreign country. The record shows that these bills were purchased at plaintiff's Vancouver agency, and paid for by drafts drawn by that agency upon the San Francisco agency; that the bills were forwarded to the latter agency, and by it presented for acceptance, and after acceptance retained for collection. Upon this state of facts, respondent contends that it should not be deprived of the right, " accorded to all foreigners, of pursuing their remedies against residents of this state upon personal contracts made out of the state." But the personal contract in this case sought to be enforced was a California contract, made here and to be performed here. The Alaska Improvement Company, the defendant in the action, did

not sell these bills to the plaintiff at Vancouver or elsewhere. Its only liability was that of a drawer and indorser, and not upon a supposed guaranty or other obligation created by a sale of the paper in a foreign jurisdiction; nor can we see why the payment of the draft drawn by the Vancouver agency upon the San Francisco agency in payment for the bills of exchange, the presentation of them for acceptance, the demand of payment at maturity, and the protesting them for non-payment is not doing a banking business in the state of California. If John Smith, a resident of Vancouver, had there purchased them, and sent them to plaintiff's agency at San Francisco for the purposes above mentioned, would any one doubt that the same acts as those performed by the plaintiff in the case at bar were within the legitimate functions of a bank,— were indeed the exercise of one of the most common and convenient functions of a bank, and which is everywhere regarded as " banking business"?

In *Bank of British North America* v. *Barling,* 44 Fed. Rep. 641, an action against a stockholder of the Alaska Improvement Company, upon his personal liability as a stockholder for these same bills of exchange, cited by respondent's counsel, the court held that the right of the plaintiff to maintain an action in the federal courts was not affected by the state statute under consideration here. Having so decided, the court also expressed the opinion in that case in the circuit court, and also in the same case in the circuit court of appeals (50 Fed. Rep. 260), that as the purchase of the bills of exchange occurred beyond the limits and jurisdiction of the state of California, the case was not within the statute; but this was clearly *obiter dicta,* and not authority upon the point here. But the whole question as to where the " banking business " was done, or the purchase was made, if material in any sense, is not conclusive. It is conceded that the plaintiff is, and during all the time covered by this transaction has been, doing a banking business in this state. The requirements of the statute are impera-

tive.   The penalty for a failure to comply with the stat-
ute is, not that it shall not maintain or prosecute any
action or proceeding upon or concerning a banking
transaction done or performed by it within this state,
but it is, that " no corporation, and no person or persons,
who fail to comply with the provisions, or any of the pro-
visions, of this law shall maintain or prosecute *any ac-
tion* or proceeding in any of the courts of this state,
until," etc.   The disability imposed by the statute as a
consequence of the non-compliance is universal.   There
are no exceptions expressed in the statute, and none are
implied.   As to remedies, the *lex fori* governs, not the
*lex loci contractus.*   The penalty imposed by the statute
for its violation affects the person or corporation by
creating a personal disability, but in no wise affects
the legality of business transacted.

The view we have taken does not, as we think, con-
flict with the New York cases cited by the respond-
ent, but, on the contrary, is clearly supported by them.
Those cases proceed upon the theory that the duty of
the corporation to make these reports is one which it
owes to the public generally for the protection of all per-
sons who may have occasion to deal with it; that the
duty is a corporate one; that the state confers upon the
corporation valuable privileges, and to carry out its
policy exacts the performance of specified duties which
they must perform as the condition upon which they
are entitled to enjoy these privileges.   It does not affect
the analogy between those cases and the case at bar, that
the penalty for a failure to comply with the statutory
requirements was in some cases a pecuniary liability of
the members of the corporation and in others a for-
feiture of the corporate franchise.   The duty was the
same, imposed for the same reason; the only difference
being in the mode of securing its performance.

3. The statute, doubtless, intended that these statements
should show the condition of the bank as of a time im-
mediately or shortly preceding the publication of the
statement, as otherwise there could be no object in re-

quiring semi-annual statements. We are not prepared to hold, however, that where an exact compliance with the requirements of the statute as to the time of publication is impossible, a publication and recording as soon thereafter as the same could reasonably be done would not be a substantial compliance, and relieve the corporation from the penalty imposed by the statute. The legislature, in fixing the time for the publication of these statements, no doubt took into consideration the fact that banks usually prepare semi-annual statements at the close of the months of June and December, and in naming January and July as the time of publication supposed that ample time was given for that purpose; and as recent information as to the condition of banks and bankers is of more importance to the public than that the publication should be made in a particular month, that a publication in February and August would be a more substantial compliance with the statute than withholding the publication and recording until the recurrence of the next July or January. If this delay in the publication had been the only defect, we should have been inclined to hold that the delay was caused by the supposition that the publication could be legally made only in the months named in the statute, and was therefore intended in good faith as a compliance with its requirements.

The conclusions at which we have arrived upon the questions above considered render it unnecessary to consider other questions presented by appellant.

We advise that the judgment and order appealed from be reversed.

FOOTE, C., and VANCLIEF, C., concurred.

For the reasons given in the foregoing opinion, the judgment and order appealed from are reversed.

McFARLAND, J., DE HAVEN, J., SHARPSTEIN, J.