LONDON & SAN FRANCISCO BANK, Limited, v. BLOCK, Tax Collector.

(Circuit Court, N. D. California. August 13, 1902.)

No. 12,390.

1. TAXATION—FRANCHISES.
Const. Cal. art. 13, § 1, declares that all property in the state not exempt under the laws of the United States shall be taxed in proportion to its value, and that the word "property," as there used, shall include, inter alia, franchises. Pol. Code Cal. § 3617, declares that the term "property" shall include moneys, credits, bonds, stocks, franchises, and all other matters and things capable of private ownership. Held, that while the franchise of a foreign banking corporation, engaged in business in California, "to be" a corporation, was not taxable as a franchise, under such statutes, the corporation's franchise "to do business" in such state was taxable.

2. SAME.
A foreign banking corporation's right to do business in the state of California is taxable, under Const. art. 12, § 15, declaring that no corporation organized without the limits of the state shall be allowed to transact business within the state on more favorable conditions than are prescribed by law to similar corporations organized under the laws of the state.

3. SAME—BRANCH BANKS—CREDITS—LOCATION.
A credit found on the books of a branch of a foreign banking company located in San Francisco, which was created by drawing drafts on the bank's main office, in London,—the drawer residing in New York,—was not a credit originating in the state of California, and was therefore not taxable to complainant in that state.

4. SAME.
Where complainant maintained branch banks in San Francisco, Portland, Or., and Tacoma, Wash., credits on the books of its San Francisco office, consisting of sums debited to its branches in Portland and Tacoma, representing money drawn by such branch banks from the San Francisco branch, were credits arising in the state of California, and taxable therein.

In Equity.

Charles P. Eells, for complainant.

Franklin K. Lane, City Atty., and W. S. Brobeck, Asst. City Atty., for defendant.

MORROW, Circuit Judge. The London & San Francisco Bank, Limited, a corporation organized and existing under the laws of the United Kingdom of Great Britain and Ireland, brings this suit in equity against the tax collector of the city and county of San Francisco for the purpose of securing an injunction restraining and enjoining the said tax collector from making a threatened sale of the real property of the complainant, and from instituting any suit or suits against the complainant for the collection of certain unpaid taxes, and to obtain a decree compelling said tax collector to accept a certain designated sum in full payment of all taxes due from the complainant for the fiscal year ending June 30, 1897. The court is also asked to decree the cancellation of a certain tax and assessment for.franchises, and that the tax and assessment of solvent credits in excess of a certain valuation be canceled. The complainant conducts a general banking business in the city and county of San Francisco, receiving deposits of money, buying and selling exchange, and making loans and discounts, in accordance with the power and authority conferred upon it by its articles of incorporation. Its principal place of business and head office is in the city of London, in England, and it conducts and maintains agencies or branch offices for the convenient transaction of its said business; one of said branch offices being in the city and county of San Francisco, another in the city of Portland, in the state of Oregon, and still another in the city of Tacoma, in the state of Washington. The head office and each of the branch offices is respectively designated and known as the London & San Francisco Bank, Limited, and the business transacted in each and all of said offices is the banking business of the complainant. The office in San Francisco is under the management of a manager, assistant manager, and cashier, holding a joint and several power of attorney from the directors of the corporation in England to do everything required in the carrying on of the banking business. In the month of April, 1896, the assessor of the city and county of San Francisco demanded from the complainant, at its branch office in the city and county of San Francisco, a statement, under oath, setting forth specifically all the real and personal property in California owned by the complainant, or in its possession or under its control, at 12 o'clock noon of the first Monday in March in the year 1896. In compliance with this demand, complainant made a return, under oath, which showed, among other things, solvent credits, unsecured by deed of trust, mortgage, or other lien on real and personal property, amounting to $1,599,811. The complainant also set forth and declared that the aggregate amount of all debts unsecured by trust deed, mortgage, or other lien on real or personal property owing by the complainant to bona fide residents of the state of California, amounted to $1,511,046, and that the taxable difference or balance of solvent credits due to complainant was the sum of $88,765. The complainant made no return or statement of

any franchise as the property of the complainant. Thereafter the assessor estimated and assessed the value of the property in the possession and under the control of the complainant, and in such estimate and assessment included an item of $999,298 as the amount of solvent credits, instead of $88,765, as returned by the complainant. The said estimate and assessment contained the further item of "franchises, $10,000," which last-named item was afterwards increased by the state board of equalization to $12,000. The rate of taxation fixed by the state board of equalization for state purposes for the fiscal year ending June 30, 1897, was $0.4290 upon each $100 in value of the taxable property in the state of California, and the rate of taxation found by the board of supervisors of the city and county of San Francisco for the purposes of said city and county was $0.9692 upon each one hundred dollars in value of the taxable property in said city and county. The aggregate rate of taxation thus levied for all purposes was $1.3982 for the fiscal year ending June 30, 1897. The total personal property assessment levied upon the complainant was for $1,264,560, made up as follows:

| | | |
|---|---|---|
| 1. Franchises.......................................................... | $ | 12,000 00 |
| 2. Furniture........................................................... | | 1,800 00 |
| 3. Money.............................................................. | | 251,462 00 |
| 4. Solvent credits..................................................... | | 999,298 00 |
| | | $1,264,560 00 |
| The tax on $1,264,560 at the rate of $1.3982 was the sum of..... | | 17,681 08 |
| Tax on real estate................................................... | | 2,545 28 |
| Total tax assessed and demanded...................... | | $20,226 36 |
| Tax admitted by complainant as properly assessable against its property ..................................................... | | 7,327 51 |
| Taxes in controversy in this action...................... | | $12,898 85 |

The taxes in controversy are made up of the following items:

| | | |
|---|---|---|
| 1. Franchises ........................................................ | $ | 12,000 |
| 2. Solvent credits, $999,298 less $88,765 admitted ........................... | | 910,533 |
| | | $922,533 |

$922,533 at the rate of $1.3982=$12,898.85.

The complainant offered to pay the sum of $7,327.51 as the total amount legally due, in place of the amount demanded, namely, $20,226.36. A temporary injunction issued, testimony was taken, and the cause submitted. In the meantime, in accordance with an ordinance of the board of supervisors of the city and county of San Francisco, the tax collector accepted the sum of $6,086.29 from the complainant in part payment of the taxes levied and assessed against it for the year 1896, receipting therefor; said payment not to affect the rights of either party as they should be determined by this court. The contested items still remaining, after various concessions and agreements on the part of both parties to this suit, are: (1) Franchises of the bank, $12,000; and (2) certain solvent credits due the bank. The solvent credits now in controversy are: (1) The sum of $164,576.60, which at the date of assessment was due and ow-

ing to complainant at its home office, in London, from the banking house of J. P. Morgan & Co., of New York; (2) the sum of $116,774, debited upon the books of the complainant at its San Francisco office to complainant's branch office at Portland, Or., and listed and assessed by said assessor as a debt due and owing by complainant in Portland to complainant in San Francisco; (3) the sum of $428,539, debited upon the books of complainant's San Francisco office to complainant's branch office at Tacoma, Wash., and listed and assessed by said assessor as a debt due and owing by complainant in Tacoma to complainant in San Francisco, making a total of $709,-889.60.

The law of this state relating to the assessment and taxation of property is found in the constitution of the state, and the laws passed to carry the provisions of the constitution into effect. The provision of the constitution involved in the present inquiry is article 13, section 1 of which provides as follows:

"All property in the state, not exempt under the laws of the United States, shall be taxed in proportion to its value, to be ascertained as provided by law. The word 'property,' as used in this article and section, is hereby declared to include moneys, credits, bonds, stocks, dues, franchises, and all other matters and things, real, personal, and mixed, capable of private ownership. * * * The legislature may provide, except in case of credits secured by mortgage or trust deed, for a deduction from credits of debts due to bona fide residents of this state."

The Political Code provides, under the title of "Revenue," and "Definitions of Property for Purposes of Assessment," as follows:

"Sec. 3617. * * * First. The term 'property' includes moneys, credits, bonds (except of railroad or quasi-public corporations), stocks, dues, franchises, and all other matters and things, real, personal, and mixed, capable of private ownership. * * * Sixth. The term 'credits' means those solvent debts, not secured by mortgage or trust deed, owing to the person, firm, corporation, or association assessed. The term 'debt' means those unsecured liabilities owing by the person, firm, corporation, or association, assessed to bona fide residents of this state, or firms, associations, or corporations doing business therein."

Section 3628 of the same Code provides:

"The franchise, roadway, roadbed, rails, and rolling stock of all railroads operated in more than one county in this state shall be assessed by the state board of equalization, as hereinafter provided for. Other franchises, if granted by the authorities of a county, city, or city and county, must be assessed in the county, city, or city and county within which they were granted; if granted by any other authority, they must be assessed in the county in which the corporations, firms, or persons holding them have their principal place of business."

It is contended on behalf of the complainant that it has not in this state any franchise taxable under the law. This contention is based upon the grounds that the right to be a corporation is not a franchise of the corporation itself, but belongs to the members composing the corporation. At common law the forming of a corporation was prohibited, but in England a corporation may be formed under a grant of the king or an act of parliament, and in the United States the chartering of corporations belongs to the legislature alone, and the grant is made either by general or special laws. This right to form a corporation is a grant to individuals, and the franchise belongs

to them. But this is the franchise to be a corporation, and not the franchise of the corporation to do, which is a separate and distinct franchise, belonging to the corporation, and having in most instances a value. This distinction is clearly stated in Railroad Co. v. Berry, 112 U. S. 609, 619, 5 Sup. Ct. 299, 303, 28 L. Ed. 837, where Mr. Justice Miller, speaking for the supreme court, said:

"The essential properties of corporate existence are quite distinct from the franchises of the corporation. The franchise of being a corporation belongs to the corporators, while the powers and privileges vested in and to be exercised by the corporate body as such are the franchise of the corporation."

This distinction is also found in cases dealing with the power of a corporation to mortgage or sell the corporate property, where it has been held that the franchise to be a corporation cannot be mortgaged or sold, but the franchise of the corporation to do the business in which it is engaged may be mortgaged or sold. Willamette Woolen Mfg. Co. v. Bank of British Columbia, 119 U. S. 191, 197, 7 Sup. Ct. 187, 30 L. Ed. 384.

But it is contended by the complainant that in carrying on the banking business in which it is engaged it is not exercising a franchise; citing the case of Bank of Augusta v. Earle, 13 Pet. 519, 595, 10 L. Ed. 274. In that case the supreme court held that "franchises are special privileges conferred by government upon the individuals, and which do not belong to the citizens of the country generally of common right." It was also held in that case that the right of banking, except the right to issue circulating notes, belonged to the individual citizens, and might be exercised by them at pleasure. Upon this authority it is claimed by the complainant that, as it does not issue circulating notes, it is not exercising a franchise in conducting its business. But this claim ignores the franchise of a corporation, which the complainant does exercise in this state, and which the assessor has determined has a value as property. The assessment is not upon the franchise granted to individuals to form the corporation, nor upon the business or occupation of a banker, but upon the property of the complainant embraced in the unity of the franchise of the corporation to have perpetual succession, to have a common seal, and to act in all its business transactions of a general banking business with those special advantages which are incident to corporate existence. With this authority the conditions under which the banking business of a corporation may be conducted are very different from those attending an individual in the same business, who cannot furnish to his customers any of these advantages or privileges. He cannot, for instance, furnish to depositors the very important advantage of perpetual succession, and without it how can the individual banker, if he is a nonresident, expect to command the business of banking? Manifestly these advantages of being a corporation are the important elements of the banking business, and constitute property in a very substantial sense. Like capital, they contribute to the power of the corporation to make money. "The franchise to do is an independent franchise, or, rather, a combination of franchises embracing all things which the corporation is given power to do: and this power to do is as much a thing of value and a part of the

intangible property of the corporation as the franchise to be." Adams Exp. Co. v Ohio State Auditor, 166 U. S. 185, 224, 17 Sup. Ct. 604, 607, 41 L. Ed. 965. "The very existence of a corporation, as such, is a franchise, and it exercises its franchise in every act which it performs as a corporation. A corporation, whose existence is a franchise, may possess powers and privileges which in themselves are not franchises, but it usually owns along with such privileges some that are franchises; but, whether the powers be entirely of the kind which are franchises or not, its existence and right to employ its corporate powers is a franchise." Waterworks v. Schottler, 62 Cal. 69, 108.

In dealing with the franchise of the complainant as a corporation, the assessment must be held as applying only to the franchise as property in this state. The state has no power to assess or tax property located outside its borders. But the complainant has come into this state, and has brought with it the franchise of a corporation to exercise its corporate powers in this state. It has no mere silent existence in the state, but it has entered into active competition with similar institutions chartered by the state. This fact brings us to the consideration of the conditions under which foreign corporations are permitted to do business in this state.

Section 15 of article 12 of the constitution provides that "no corporation organized outside the limits of this state shall be allowed to transact business within this state on more favorable conditions than are prescribed by law to similar corporations organized under the laws of this state." This provision of the constitution has been held applicable to foreign banking corporations by the supreme court of this state. Bank of British North America v. Alaska Imp. Co., 97 Cal. 28, 31 Pac. 726; Same v. Madison, 99 Cal. 125, 133, 33 Pac. 762. Moreover, while the charter of the complainant is not before the court, it appears from the very name of the complainant, and is to be inferred from the business in which it is engaged, that it was organized for the purpose of transacting corporate business and owning corporate property in the city of San Francisco. This fact brings the complainant within the rule that, where a corporation is organized in one state or country for the purpose of doing business in another, it must be assumed that the charter contract was made with reference to the laws of the state or country in which the business is to be carried on, and that it is to be subject to the liabilities which those laws impose. Pinney v. Nelson, 183 U. S. 144, 22 Sup. Ct. 52, 46 L. Ed. 125. The constitution and laws of this state declare corporate franchises to be property, and under this law the franchises of domestic corporations are taxed. Waterworks v. Schottler, 62 Cal. 69. It is this property in a corporate franchise in the possession of and owned and controlled by the complainant in this state that is involved in this assessment. It follows that the assessment was made in accordance with law, and must be enforced.

The remaining question relates to the assessment upon solvent credits. The first item is the sum of $164,576.60, which at the date of the assessment was due and owing to the complainant at its head office, in London, from the banking house of J. P. Morgan & Co., of New York. This credit was created by the drawing of drafts by J. P.

Morgan & Co. upon the complainant in London in the aggregate sum stated; that is to say, the transactions took place between the banking house of J. P. Morgan & Co., in New York, and the banking house of the complainant, in London, and was therefore a credit originating outside of the state. And while it may be that the credit, under certain circumstances, might be made available to the complainant in its banking business in San Francisco, it does not appear that it represented a money transaction arising out of the property or business of the complainant in San Francisco. For the purpose of taxation the property and business of the complainant in San Francisco must be treated as separate and distinct from the property and business of the complainant elsewhere. This credit in favor of the banking house in London was therefore not property in the possession or under the control of the banking house in San Francisco, and was not subject to the assessment.

The second item is the sum of $116,774, debited upon the books of the complainant at its San Francisco office to its branch office at Portland, Or. The amount was made up of remittances made by the banking house of the complainant in San Francisco to the banking house of the complainant in Portland, Or. In other words, the money was drawn by the Portland bank from the San Francisco bank, and invested in Portland by the Portland bank. This was a transaction in which the corporation in San Francisco, having property in its possession and under its control, secured a credit in its favor by sending money to the Portland bank. If the money had been retained in the complainant's banking house in San Francisco, it would have been taxable as money in the bank here. It was therefore a credit which arose out of the property and business of the complainant in this state, and was taxable as property here.

The third item is the sum of $428,539, debited upon the books of the complainant's San Francisco office to complainant's branch office at Tacoma, in the state of Washington. This transaction was of precisely the same character as the preceding one, and is subject to the same consideration.

A decree will be entered in accordance with this opinion.