[S. F. No. 5308.   Department Two.—November 18, 1910.]

ALASKA SALMON COMPANY (a Corporation), Respondent, v. STANDARD BOX COMPANY (a Corporation), Appellant.

STATUTE OF FRAUDS—PLEADING WRITTEN CONTRACT UNNECESSARY.—In an action on a contract required by the statute of frauds to be in writing, the complaint need not allege that it was in writing. When the complaint alleges the making of the contract, the law presumes it was valid, and if the defendant relies on the statute he must plead it in his answer.

CORPORATIONS—ADMISSION OF CORPORATE EXISTENCE—DEFENSE OF FAILURE TO PAY LICENSE TAX—BURDEN OF PROOF.—In an action by a California corporation, an averment in the answer of the plaintiff's corporate existence and its engagement in business, is an admission of its capacity to sue, and is a waiver of proof that it is a corporation. Under such pleadings, the defendant, if it relies upon the fact as a defense, must show the failure of the plaintiff to comply with the provisions of the act imposing a license-tax upon corporations. It was not incumbent on the plaintiff, merely because nonpayment of the license-tax was pleaded in the answer, to prove its payment in order to establish its right to maintain the action.

ID.—PLEADING FAILURE TO PAY LICENSE-TAX—FORFEITURE OF CORPORATE EXISTENCE.—In pleading such defense, it is not sufficient to merely allege "that the plaintiff has wholly failed to pay the license or any of the licenses required to be paid by the provisions of the act." A forfeiture of corporate existence under that act is not effected unless the acts required to be performed by the secretary of state and the governor in proclaiming the forfeiture have been performed in the manner required, and the performance of such acts must be alleged.

SALE—DAMAGES FOR BREACH BY SELLER—PURCHASER'S DUTY TO MINIMIZE LOSS.—A purchaser, where a seller has violated his contract, is charged with the general duty of doing every reasonable thing to minimize his own loss and thus reduce the damages for which the seller has become liable by his breach.

ID.—ACCEPTANCE UNDER INSUFFICIENT DELIVERY—WAIVER OF SELLER'S BREACH OF CONTRACT.—A purchaser of a large quantity of boxes, which were to be paid for as delivered, is justified in receiving those furnished, even though deficient in number and not up to standard in quality, where the time available was too short for their examination, and it would have been difficult, if not impossible, to replace them. Under such circumstances, the acceptance of the insufficient delivery was not a waiver of the seller's breach of the contract.

ID.—FAILURE TO PAY FOR INSTALLMENT—ARBITRATION TO DETERMINE DISPUTE—ACCEPTANCE OF AWARD.—The failure of the purchaser to

pay for an installment of the boxes delivered did not avoid the contract, where a dispute arose between the parties as to the sufficiency of the prior deliveries, which was referred to an arbitration, acceptable to both parties and fully executed by the judgment of the arbitrator and by the payment and acceptance of his award, without sign of protest from either party.

ID.—DAMAGES FOR FAILURE TO DELIVER—PLAINTIFF'S READINESS TO PERFORM—PROOF OF READINESS.—In an action by a purchaser to recover damages for the failure of the seller to deliver the goods contracted for, the plaintiff must prove that he was ready, able, and willing to perform the contract on his part. But where the insolvency of plaintiff is not charged, and where the defense is not in any way based upon such inability, very slight proof will fill the requirement.

ID.—PLEADING CONSIDERATION FOR CONTRACT—ABSENCE OF DEMURRER.— An averment in the complaint in such action, that the plaintiff had always been ready and willing to receive the goods contracted to be sold, "and to pay for them at the price called for by said contract and in accordance with the terms thereof," is a sufficient allegation of consideration, in the absence of either a special or general demurrer.

ID.—DAMAGES FOR BREACH—VALUE IN NEAREST MARKET—PURCHASE AT LESS PRICE IN OTHER MARKET.—In such action, the provision of section 3354 of the Civil Code, that in estimating damages, the value is deemed to be the price at which an equivalent thing could be bought in the market, "nearest to the place" where delivery ought to have been made, is designed wholly for the protection and benefit of the seller· in default; and where it appears that the damages for which the seller was liable were decreased, and the judgment against him lessened, by a purchase in another market, it will not be held that the purchase was to his injury, or in violation of law.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order refusing a new trial. John Hunt, Judge.

The facts are stated in the opinion of the court.

P. L. Benjamin, for Appellant.

Chickering & Gregory, for Respondent.

HENSHAW, J.—The action was for damages for breach of contract. The case was tried before a jury whose verdict was given for plaintiff. From the judgment which followed and from the order of the court denying defendant's motion for a new trial it appeals.

The complaint charged that in October, 1905, plaintiff and defendant entered into a contract whereby defendant agreed to manufacture for plaintiff one hundred thousand wooden boxes to be delivered during the canning seasons of 1906 and 1907 as called for by plaintiff for its use in the business of manufacturing and selling canned salmon.    Defendant supplied plaintiff for the canning season of 1906 with forty-four thousand boxes and plaintiff prior to the commencement of the canning season of 1907 demanded of defendant that it furnish the remaining boxes, to wit, fifty-six thousand, for use during the canning season of 1907.    It is alleged that plaintiff has always been ready and willing to receive the said fifty-six thousand boxes and to pay for them at the price called for by said contract, and in accordance with the terms thereof, but that defendant has refused to deliver the boxes, whereby plaintiff has been damaged in the sum of $3,920. The answer was by general denial and for a special defense it is alleged "that the plaintiff is and for more than three years last past has been a corporation, organized, existing and doing business under and by virtue of the laws of the state of California."    That plaintiff has at all times since its incorporation wholly failed to comply with the provisions of the act imposing a license-tax upon corporations and has wholly failed to pay the license or any of the licenses required by this act.    The jury's verdict was for $3,640.30.

1. It is asserted that the complaint wholly fails to state a cause of action because it does not allege that the contract of October was in writing.    The law will presume the contract to be valid and not invalid and thus, where required by the statute of frauds will presume it to be evidenced by writing. (*Nunez* v. *Morgan,* 77 Cal. 427, [19 Pac. 753]; *Bradford Investment Co.* v. *Joost,* 117 Cal. 204, [48 Pac. 1083].)    If the defendant relies upon the statute of frauds against such a complaint he must plead it.    (*Broder* v. *Conklin,* 77 Cal. 330, [19 Pac. 513].)    Moreover, the execution of the contract was not denied and in the answer the written agreement is expressly set out in a counterclaim for damages; and finally, the contract was, in fact, in writing and was proved and legally evidenced by an interchange of business letters between the two corporations.

2. It is argued that because plaintiff did not affirmatively

show the payment by it of the license-tax required, it cannot be permitted to maintain this action. It will be remembered that the defense pleaded such non-payment by plaintiff, but no evidence was introduced in support of the plea. The answer itself avers that the plaintiff is a corporation and is engaged in business as a corporation. This is an admission of the plaintiff's corporate capacity to sue and is a waiver of the proof contemplated by section 297 of the Civil Code to the effect that a certified copy of the articles of incorporation "must be received in all the courts of this state and in other places as *prima facie* evidence of the facts therein stated." The corporate existence and general capacity of the plaintiff thus being established by the admission of the pleadings it was a matter of affirmative defense for the box company to have shown the extraneous fact that plaintiff had failed to comply with the corporation license-tax law and therefore should not be permitted to proceed further. The burden of proving a negative thus being cast upon the defendant only slight evidence would be required. But, as has been said, defendant never undertook to furnish any evidence at all, and here rests merely upon the proposition that every corporation must itself affirmatively show a compliance with the corporation license-tax act before being permitted to prosecute an action. This view of the law, for the reasons given, cannot be upheld.

3. To the better understanding of the other propositions advanced by appellant, comprehension of the facts becomes necessary. Plaintiff is engaged in the business of canning salmon in distant Alaska. It sends its ships equipped with the necessary supplies to its canneries. Its success for any year is absolutely dependent upon its ability to have its men and supplies at its canneries in time to handle the salmon run. It was important, therefore, that its supplies should be on board the ship and the ship started for the Arctic as early as practicable. As part of its supplies it required for the years 1906 and 1907 each fifty thousand wooden boxes in which were to be packed the tins of salmon. These boxes the defendant undertook to furnish, "50,000 to be delivered f. o. b. ship at wharf in San Francisco during the first week of April, 1906" and fifty thousand to be delivered at the same time in 1907. "Boxes to be of standard size and quality,

guaranteed to· be perfectly dry. The price of shook 10½c. each; cases nailed up 12½c. each, all cash less 2 per cent." In fact, defendant did not deliver all of the first lot of fifty thousand boxes and complaint was made by plaintiff to defendant both of the shortage and of the quality of the boxes which it actually delivered in that they were wet and not dry. The effect of the wet boxes would be to rust the tin cans of salmon and so impair the value of the pack. The ship started north on April 12th and demand for payment was made by defendant upon plaintiff for the boxes already delivered. The earthquake and fire with the consequent confusion and disturbance of all business occurred on April 18th. Plaintiff insisted that the payment should be made only after adjustment because of the inferior quality of the boxes and the failure to furnish the full fifty thousand contracted for. Finally an agreement was reached evidenced by a writing signed by the Standard Box Company to the effect that upon the payment of three thousand dollars by plaintiff the box company would leave a balance which it claimed to be due, of $1,175.57, in the hands of plaintiff "until such time that the ship 'Big Bonanza' arrives from the north at about September next, when you can ascertain damage sustained, if any, on account of delivery not being in accordance with contract dated October 26, 1905. Also on account of quality which you claim to be below standard and we hereby appoint James Madison the sole arbitrator in this matter, and his decision to be˜final and binding upon this company." The plaintiff then paid the three thousand dollars and James Madison, upon his return, declared that there was $754.40 still due to defendant, the remainder being deducted for damages. Upon October 6, 1906, defendant was paid this $754.40 in full satisfaction of its claim and defendant receipted without protest, never intimated its dissatisfaction with the settlement or its desire to terminate the contract. Subsequently, on February 19, 1907, plaintiff made demand for the fifty-six thousand boxes for the year 1907 to be delivered during the first week in April in accordance with the contract. Then, for the first time, on February 20th the box company replied: "As. to cutting your order for 56,000 cases, we would say that if we can agree upon new terms and conditions and prices we are willing to fill same, as we consider your treat-

ment of us an abrogation of your contract, in withholding our money for such a long time." Upon this refusal plaintiff bought boxes from a northern box factory in Astoria, Oregon, and lays damages for the difference between the defendant's contract price and the price which it was thus compelled to pay.

It was not error for the court to refuse to instruct the jury as requested by defendant to the following effect: "As a matter of law, the contract in this case required payment to be made by plaintiff for each lot of boxes delivered, as the same should be delivered, or, at the very latest, upon the collection day following each lot of deliveries, and it was the duty of the plaintiff to pay the defendant at the very latest on April 13, 1906, if that was a collection day, the amount due for all boxes delivered by collection day; I mean, of course, collection day as known to the business world generally in San Francisco." Such instruction would have made it mandatory for the jury to find that the failure or refusal of plaintiff to pay for all the delivered boxes on April 13th was a violation of the contract, notwithstanding the fact that the refusal to pay might have been fully and completely justified by a delivery of an insufficient and inferior quantity without opportunity for counting and inspection. There is no question but that this contract contemplated a cash payment. It is equally true that it contemplated delivery in the first week in April, a delivery which defendant did not make. The defendant was aware that the boxes were to go north on shipboard under the circumstances noted. The general line of cases to the effect that it is the duty of plaintiff to inspect goods when delivered and reject them if not up to specification, and that the plaintiff cannot accept goods in part and reject them in part, and that having kept the goods it is too late for plaintiff to contend that they did not conform to the contract, are none of them apposite. Each case must be governed by its conditions and facts. A plaintiff, where a defendant has violated his contract, is charged with the general duty of doing every reasonable thing to minimize his own loss and thus reduce the damages for which defendant has become liable by his breach. The time for examination was extremely short. Whatever goods were rejected as not up to quality involved, in their rejection, trouble

and difficulty, if not absolute inability, for their replacement. Plaintiff was, therefore, justified in doing as it did, namely, taking on board the boxes furnished, even though deficient in number and not up to standard in quality. That they were of inferior quality was noted by plaintiff and made known to defendant during delivery. Under these circumstances, the instruction actually given by the court was all that defendant was entitled to ask. It was as follows: "When a contract for the manufacture and delivery of certain goods, provides for the payment of the contract price in installments, as the goods are delivered, it is the duty of the party who is to pay for the goods to pay each installment as required by the contract; and if when, under the contract, an installment becomes due, the party who is to pay refuses or fails to pay such installment, the other party to the contract has the right to cease the manufacture and delivery of the goods, and to consider the contract at an end; and the other party to the contract who has so failed to make payment of an installment, when the same became due, cannot, under such circumstances, complain of the refusal of the contractor to proceed further with the manufacture and delivery of the goods, and cannot maintain any action against the contractor for damages because of such refusal of the contractor to proceed with the manufacture and delivery of the goods."

4. The contract was not terminated before this action was brought. The argument herein seems to be based upon the law of the preceding rejected instruction, that the failure to pay upon delivery operated to avoid the contract. But neither then nor thereafter, until its letter of February, 1907, did defendant ever treat the contract as abrogated, annulled, or rescinded. It never gave notice of rescission. To the contrary, it entered into an arbitration agreement for the adjustment of its differences with the plaintiff under the contract. Regardless of the question as to whether or not that arbitration agreement was in strict legal form, it was accepted by both parties and fully executed by the judgment of the arbitrator and by the payment and acceptance of his award, without sign of protest from either party.

5. It is contended that plaintiff failed to prove that it was ready, able, and willing to perform the contract on its part. Such proof is, of course, required. (*Barron* v. *Frink*, 30 Cal.

486; *McGehee* v. *Hill,* 4 Porter (Ala.) 170, [29 Am. Dec. 277]; *Grandy* v. *McCleese,* 2 Jones (47 N. C.) 142.) But where the insolvency of plaintiff is not charged, and where the defense is not in any way based upon such inability, very slight proof will fill the requirement. . The complaint alleged that the plaintiff has always been ready and willing to receive the fifty-six thousand boxes and pay for them under the contract. No question in the case arose over any previous inability of the plaintiff to pay. To the contrary, it plainly appears by defendant's letter of February 20th that its refusal to furnish the boxes involved no question of plaintiff's ability, but arose simply from the defendant's demand that new terms, conditions, and price be fixed. The price of such boxes at this time had risen. We hold the evidence to have been sufficient.

6. The court instructed the jury to the following effect: "The plaintiff claims to have paid 7 cents in excess of this contract price, for each box of the remaining 56,140, making $3,920, and, if you find that it did make such payment, then plaintiff is entitled to a judgment for this amount, unless the contract was by some act or omission of the plaintiff, rescinded or terminated." It is contended that this instruction does violence to the provisions of section 3354 of the Civil Code, to the effect that in estimating damages, the value is deemed to be the price at which one might have bought an equivalent thing in the market nearest to the place where the property ought to have been put in his possession. It is asserted that a purchase from the Astoria Box Factory was not a purchase in the nearest place, and that the purchase by plaintiff of the boxes at seven cents advance of the contract price in no way tended to show the market value. Still further it is said that the boxes for which plaintiff paid the advanced price were not the kind and quality of boxes called for by the contract, but were better boxes, of better material. The evidence on the last point is that the boxes "were the same boxes called for by the contract here, only much better boxes and better material," which is fairly open to the construction that what the witness meant to convey was that the boxes were of the same size and standard make, and general quality, but that the boxes which they received from the Astoria factory were of better material and workmanship. It is in evi-

dence, moreover, that the price obtained from the Astoria Box Company was the cheapest price for which the plaintiff could get the boxes from any one anywhere. The bids of the San Francisco box companies were higher, and therefore if plaintiff had bought the boxes in San Francisco, defendant's damage would have been greater. The provision for the purchase of property in the market "nearest to the place" is a provision designed wholly for the protection and benefit of the vendor in default. It is to prevent any exorbitant or extortionate charge being made against him by the unnecessary purchase of the goods in a distant or foreign market. But where, as here, it is shown that the damages for which defendant was liable were decreased, and the consequent award against him lessened by the purchase in a northern market, it will not be said that the purchase was to his injury or in violation of the law.

7. The plaintiff clearly showed that it had sustained damage, and from all that has been said it is apparent that the court was justified in refusing an instruction to the jury to the effect that it was the duty of the plaintiff to have accepted the full quantity of fifty thousand boxes if they were delivered on the wharf before the vessel put out into the stream. No evidence sustains the proposition that the fifty thousand boxes were in fact delivered at the wharf. Indeed, it appears that the delivery of the final boxes to complete the fifty thousand was made after the ship had left. The contract called for delivery in the first week in April. Defendants were engaged in supplying other ships, the time was extended to April 12th, and when the ship put forth into the stream delivery then was not completed.

For these reasons the judgment and order appealed from are affirmed.

Lorigan, J., and Melvin, J., concurred.

Hearing in Bank denied.

In denying a hearing in Bank the court in Bank rendered the following opinion on December 17, 1910:—

THE COURT.—1. In the petition for a rehearing it is urged that this court misconceived the position of appellant,

which is that the complaint did not state a cause of action in failing to allege that the contract was in writing and in failing to allege any consideration for the agreement which it pleads that defendant entered into. Except for the petition for rehearing, it would have been regarded as unnecessary to say that no demurrer was interposed to the complaint, either general or special, and that the complaint does allege that plaintiff has always been ready and willing "to receive the said 56,000 boxes and to pay for them at the price called for by said contract and in accordance with the terms thereof." However defective this allegation might be regarded as an allegation of consideration under the attack of a special demurrer, in the absence of either general or special demurrer a cause of action is sufficiently stated. In *Moore* v. *Waddle,* 34 Cal. 145, discussion was had with reference to a demurrer which was therein interposed to the sufficiency of the complaint. It was pointed out that under the common-law rules of pleading a consideration was imported only to an instrument under seal. It was held that the contract sued upon was sealed, and that therefore the ground of demurrer was not well taken. The same is true of *Acheson* v. *Western Union Tel. Co.,* 96 Cal. 641, [31 Pac. 583]. There, too, demurrer was interposed to the complaint. Here, as has been said, no demurrer was interposed to the complaint. There is an allegation in the complaint to the effect that plaintiff was to pay for the boxes "the price called for by the contract." There was therefore not an absence of allegation of consideration, but, at the worst, a defective allegation of consideration to which a special demurrer should have been but was not addressed.

2. Defendant for special defense pleaded the non-payment of the corporation license-tax. It offered no word of evidence in support of this defense, but argues upon appeal that because it tendered this defense it became incumbent upon the plaintiff to prove, upon its part, the payment of the tax, this in direct denial of the code declaration to the effect that while evidence need not be given in support of a negative allegation generally, it must be given "when such negative allegation is an essential part of the statement of the right or title on which the cause of action or defense is founded." (Code Civ. Proc., 1869.) Here was a defense wholly based

upon the negative allegation of non-payment. It was incumbent upon the defendant to support such a defense by some evidence, and, from the nature of the defense such evidence was easily procurable. It is meaningless to cite cases where the courts have held as to certain negative averments that proof is not necessary. The code provision covers the whole matter. *Byers* v. *Bouret,* 64 Cal. 73, [28 Pac. 61], is not in point. The discussion there was not directed to the burden of proof. Issue was joined upon the plea in abatement that plaintiffs had not complied with the provisions of sections 2466 and 2468 of the Civil Code relating to partnerships and the court made findings thereon. The discussion in this court was upon the sufficiency of the findings to support the judgment. What is said as to the duty of the plaintiffs "to have shown that the certificate had been filed and published once a week for four successive weeks before the commencement of the action" had reference not at all to the burden of proof, but to the fact that by the evidence which they introduced they failed to establish a compliance with the law. As little in point is *Sweeney* v. *Stanford,* 67 Cal. 635, [8 Pac. 444]. There, upon its face, the complaint established that plaintiffs were partners doing business under a designation which did not show the names of the partners. This made it incumbent upon the plaintiffs to plead that they had filed a certificate as required by section 2468 of the Civil Code. They did so plead. The allegation as to the filing of the certificate was denied by the answer. The certificate which was offered in evidence did not comply with the statute. It was held that since the complaint established that plaintiffs were doing business as copartners under a designation which did not show the names of the partners, the allegation of compliance with the provisions of the code was essential to the sufficiency of the complaint, and that plaintiffs could not recover without proving it. In the present case no such question is involved. The same is true of *Bank of British North America* v. *Alaska Imp. Co.,* 97 Cal. 28, [31 Pac. 726]. The law required a foreign bank doing business in California to publish certain statements as a prerequisite to their right to maintain or prosecute any action or proceeding in any of the courts of the state. The answer averred that plaintiffs had not complied with certain provisions of that act. The court's findings were, in effect, that the

CLVIII Cal.—37

plaintiffs had sufficiently complied with the law. Here, again, was no discussion of the burden of proof, this court determining merely that the evidence offered by plaintiff in support of the finding that it had complied with the law was insufficient and therefore reversed the judgment. It may thus be seen that not only are none of these cases in point. It may be added that the pleading of the special defense is wholly insufficient to show that a forfeiture was worked by failure to pay the license-tax. Manifestly, if a forfeiture did not result, plaintiff's corporate capacity still existed. The allegation of the defense is merely that the plaintiff has "wholly failed to comply with the provisions or any provisions of the act of the legislature" relating to the license-tax upon corporations and "has wholly failed to pay the license or any of the licenses required to be paid by the provisions of the said act." But a casual inspection of the act itself and of the decision of this court in *Kaiser Land and Fruit Co.* v. *Curry,* 155 Cal. 638, [103 Pac. 341], will disclose to the legal mind that the forfeiture which destroys the corporate existence does not result from a failure to pay the license-tax, but results from a failure to pay the license-tax, coupled with the further fact "that the acts required to be performed by the secretary of state and the governor (proclaiming the forfeiture) shall have been performed in the manner required." (*Kaiser Land and Fruit Co.* v. *Curry,* 155 Cal. 654, [103 Pac. 347].) Without the performance of such acts the forfeiture does not result and the pleading is wholly insufficient by reason of its failure to aver their due performance.

The absence of merit in this petition is thus shown. Petitioner seems to have undertaken to supply this lack of merit by disrespectful vehemence.

It is therefore ordered that the petition for rehearing be denied and that the petition itself be stricken from the files of this court.