[S. F. No. 5146. In Bank.—June 15, 1909.]

KAISER LAND AND FRUIT COMPANY, Petitioner, v. CHARLES F. CURRY as Secretary of State of the State of California, Respondent.

CORPORATION—STATE LICENSE-TAX—ACT OF MARCH 29, 1905—CORPORATIONS NOT TRANSACTING BUSINESS.—The act of March 29, 1905, entitled "An act relating to revenue and taxation, providing for a license-tax upon corporations, and making an appropriation for the

purposes of carrying out the objects of this act," as amended June 13, 1906, March 19, 1907, and March 20, 1907, imposes the duty on all domestic corporations (excepting educational, religious, scientific, and charitable corporations, and all corporations which are not organized for pecuniary profit) to pay the so-called license-tax regardless of whether they actually transact or attempt to transact business in the state.

ID.—FAILURE OF DOMESTIC CORPORATION TO PAY LICENSE—IPSO FACTO FORFEITURE.—The failure on the part of a domestic corporation to comply with the provisions of the act by paying the charge imposed thereby for any year by four o'clock P. M. of the thirtieth day of November of that year, *ipso facto* works a forfeiture of its charter. It is not necessary that the forfeiture before becoming effective must be established by the decree of a court of competent jurisdiction in a proceeding brought for that purpose.

ID.—FORFEITURE AT COMMON LAW—STATUTE MAY PRESCRIBE FORFEITURE.—Although a forfeiture at common law does not operate to divest the title of the owner until by a proper judgment in a suit instituted for that purpose the rights of the state have been determined, a statute prescribing a forfeiture may be self-executing. Such is the necessary effect of the language used in the act of March 29, 1905.

ID.—STATUTES RELIEVING FROM FORFEITURE ALREADY INCURRED.—Section 6 of the act, as amended June 13, 1906 (Stats. 1906, p. 22), providing that any corporation which failed to pay the license-tax and penalty required by the original act "may between the first day of July, 1906, and the hour of four o'clock P. M. of the first day of September, 1906, pay the said license-tax and penalty," together with the license-tax for the current year, and thereby "be relieved from the forfeiture prescribed" by such original act, and the amendment of such section, approved March 20, 1907 (Stats. 1907, p. 746), referring to amounts due and unpaid for the years 1905-6 and 1906-7, can be construed in no other way than as being designed simply to relieve corporations that had failed to pay the charges for certain specified years from the effect of a forfeiture *that had already occurred,* upon condition that such corporations should then pay the amount of such charges. Whether such amendments, as so construed, would be in conflict with section 7 of article XIII of the state constitution is not determined.

ID.—LICENSE CHARGE NOT TAX ON PROPERTY—CONSTITUTIONAL LAW—PRIVILEGE OF BEING AND CONTINUING A CORPORATION.—The charge imposed by the act of March 29, 1905, on the corporations affected by its provisions, and denominated a "license-tax," is not a tax on "property" within the meaning of that word as used in section 1 of article XIII of the state constitution, providing that "all property in the state, not exempt under the laws of the United States, shall be taxed in proportion to its value, to be ascertained as provided by law." It is merely an annual charge or excise imposed by the state for the privilege obtained from it of being and continuing to exist as a corporation.

ID.—POWER OF STATE OVER CORPORATIONS—RESERVED POWER UNDER CONSTITUTION.—The state has the sole power to determine upon what conditions corporations may be created and exist within its borders, and under the power reserved in section 1 of article XII of the constitution of 1879, the legislature has the right to change the conditions upon which the privilege of being and acting as a corporation shall continue to exist, and every corporation accepts its charter subject to the exercise of such reserved power.

ID.—CONDITION IMPOSED ON EXISTING CORPORATION—ANNUAL PAYMENT OF LICENSE FEE.—Where a state possesses such reserved power as to corporations already existing, it may, for the purpose of increasing its revenue, prescribe as one of such conditions the annual payment of any amount it sees fit.

ID.—LICENSE CHARGE ON FOREIGN CORPORATIONS.—So far as the license charge is imposed by the act on foreign corporations, it is of the same general nature and rests upon the same basis as the charge imposed on domestic corporations. It is imposed as a condition of the grant of the privilege to do business in the state, and is not a tax on property.

ID.—DUE PROCESS OF LAW—PRIVILEGE GRANTED ON CONDITION SUBSEQUENT.—So construed, the act of March 29, 1905, with its amendments, is not void as being in conflict with the due process of law provisions of the federal and state constitutions, by reason of the fact that the failure of a domestic corporation to pay the charge imposed *ipso facto* works a forfeiture of its charter, without any opportunity to the corporation to be heard. Practically, the act operates as a grant by the state of the privilege of being and acting as a corporation upon a condition subsequent, which is to continue only upon the condition that the corporation shall annually make the payments required, and that upon failure to make such payments, the privilege shall *ipso facto* cease, provided, that the acts required to be performed by the secretary of state and the governor shall have been performed in the manner required. This is not the taking of property without due process of law, or, indeed, the taking of property at all, within the meaning of the constitutional provisions.

ID.—WHEN FORFEITURE IS INCURRED.—It is only when the breach of the condition prescribed by the act in fact occurs that there is any forfeiture, and there can be no forfeiture as to any corporation exempted from the provisions of the act.

ID.—EXERCISE OF JUDICIAL AND EXECUTIVE FUNCTIONS BY SECRETARY OF STATE.—The act is not in violation of section 1 of article III of the state constitution, providing that no person charged with the exercise of powers properly belonging to one of the three departments of the state, the legislative, executive, and judicial, shall exercise any functions appertaining to either of the others, except as in the constitution provided. The secretary of state, an executive officer, is not given judicial power to determine whether any corporation which

has failed to pay the charge, is within or without the exception mentioned in section 7 of the act. While he must exercise his judgment in determining which of the corporations whose articles are on file come within the description given in section 7, purely for the purpose of determining which shall be included in the list of delinquent corporations he is required to furnish the governor, he does this, as a mere incident to the exercise of a purely ministerial function, and is not making a determination that is binding on any corporation.

ID.—UNIFORMITY OF OPERATION.—DIFFERENT PENALTIES APPLICABLE TO DOMESTIC AND FOREIGN CORPORATIONS.—The act is not in conflict with section 11 of article I of the state constitution, in failing to operate uniformly upon all the corporations to which it is applicable, in that it imposes different penalties upon domestic and foreign corporations for non-payment of the charge. The domestic corporation forfeits its charter, while the foreign corporation forfeits only the right to do business in the state. As to each, the state takes away all that it has given, and all that it can take away. The difference in the power of the state as regards domestic and foreign corporations furnishes a rational and proper basis for providing these different penalties in cases of delinquency by the two classes of corporations.

ID.—DIFFERENT OPERATION OF LAW ON DIFFERENT CLASSES.—The operation of a law is none the less uniform because it operates differently upon different classes, provided there be a reasonable basis for the classification and for a different treatment of the various classes.

ID.—FOREIGN CORPORATIONS TRANSACTING BUSINESS IN STATE—SIMILARITY OF CONDITIONS.—The act is not in conflict with section 15 of article XII of the state constitution, providing that "no corporation outside the limits of this state shall be allowed to transact business within this state on more favorable conditions than are prescribed by law to similar corporations organized under the laws of this state." The conditions prescribed upon which corporations are allowed to transact business within the state are exactly the same as to both classes, domestic and foreign. Each is required to pay the same amount, and the time for payment is the same as to each.

ID.—DRASTIC NATURE OF PENALTY.—EQUAL PROTECTION OF LAW.—The provision of the act for a forfeiture of the corporate charter of a domestic corporation for non-payment of the charge imposed by the act is not of such a nature as to bring it within the operation of the rule enunciated in *Ex parte Young*, 209 U. S. 123, to the effect that where the validity of a statute depends upon the existence of a fact which can be determined by a court only after investigation of a very complicated and technical character, a provision in the statute which imposes such severe penalties by way of fine and imprisonment for disobedience of its provisions, as to intimidate the parties affected thereby from resorting to the courts to test its

CLV Cal.—41

validity, practically prohibits those parties from seeking such judicial construction and denies them the equal protection of the law..

ID.—SUFFICIENCY OF TITLE OF ACT.—The act is not void for failure of the title to sufficiently express its subject, within the meaning of section 24 of article IV of the state constitution. The title indicates the imposition of a charge of some kind upon corporations as such, and the language used does not reasonably tend to induce the belief that the act was confined to corporations actually engaged in the transaction of business. It was not necessary to state in terms in the title that the act was one "amending the charters of corporations."

APPLICATION for a Writ of Mandate prayed to be directed against the Secretary of State of the State of California.

The facts are stated in the opinion of the court.

Gray & Cooper, and Otto Irving Wise, Louis Hirsch, and Hugo K. Asher, *Amici Curiæ*, for Petitioner.

U. S. Webb, Attorney-General, R. C. Van Fleet, Deputy Attorney-General, and Raymond Benjamin, Deputy Attorney-General, for Respondent.

ANGELLOTTI, J.—*Mandamus* prayed to be directed against Charles F. Curry, secretary of state of the state of California.

This is an original proceeding in mandate. The petition shows the following to be the material facts: Plaintiff is a domestic corporation formed for purposes of profit, whose certificate of incorporation was issued August 12, 1899. By its articles of incorporation, its number of directors is fixed at five. On or about October 15, 1908, a majority of the stockholders thereof duly met and executed and acknowledged a certificate, decreasing the number of directors from five to three, which, on October 22, 1908, was filed in the office of the county clerk of Santa Barbara County, the county in which was located the principal place of business of the corporation. A certified copy of this certificate was presented to the secretary of state for filing, on October 29, 1908, together with the fees allowed by law for filing, and the corporation demanded that such officer file the same, and issue a certificate of decrease of the number of directors. (Civ. Code, sec. 290.) The

secretary of state refused to file the same or to issue such certificate, on the ground that said corporation had never paid the "corporation license-tax," claimed to be due under an act of the state legislature, entitled "An act relating to revenue and taxation, providing for a license-tax upon corporations, and making an appropriation for the purposes of carrying out the objects of this act," approved March 20, 1905 (Stats. 1905, p. 493), as amended June 13, 1906 (Stats. 1906, p. 22), March 19, 1907 (Stats. 1907, p. 664), and March 20, 1907 (Stats. 1907, p. 745), claiming that by reason of such non-payment, said corporation had become dissolved and had forfeited its charter and no longer existed. Said corporation transacted no business of any kind or character in the state of California or elsewhere, between July 1, 1907, and June 30, 1908. It had never paid said tax, but at the time of the tender for filing of said certificate, on October 29, 1908, it offered to pay the amount due for said fiscal year 1907-8, the penalty for delinquency provided in the act, and any other amount that had since become due thereunder, and is now ready and willing to pay the same. The matter has been submitted for decision upon the petition and the demurrer thereto of the secretary of state based on the ground that the petition does not state facts sufficient to warrant relief.

So far as it may be considered material, the act is as follows:—

"Section 1.   No corporation heretofore or hereafter incorporated under the laws of this state, or of any other state, shall do or attempt to do business by virtue of its charter or certificate of incorporation, in this state, without a state license therefor.

"Section 2.   It shall be the duty of every corporation incorporated under the laws of this state, and of every foreign corporation now doing business, or which shall hereafter engage in business in this state, to procure annually from the secretary of state a license authorizing the transaction of such business in this state, and shall pay therefor a license-tax as follows": (Then follows a statement of the amounts of tax proportioned to the amount of the authorized capital stock of the corporation, the tax running from ten dollars where the authorized capital stock does not exceed ten thousand dollars, to two hundred and fifty dollars where it exceeds five million dollars.)

"Said license-tax or fee shall be due and payable on the first day of July of each and every year to the secretary of state, who shall pay the same into the state treasury. If not paid on or before the hour of four o'clock P. M. of the first day of September next thereafter, the same shall become delinquent and there shall be added thereto, as a penalty for such delinquency, the sum of ten dollars.

"The license-tax or fee hereby provided authorizes the corporation to transact its business during the year or for any fractional part of each year in which such license-tax or fee is paid. 'Year,' within the meaning of this act, means from and including the first day of July to and including the thirtieth day of June next thereafter.

"Section 3. The secretary of state shall, on or before the fifteenth day of September in each year, report to the governor of the state a list of all corporations which have become delinquent, as provided in section two of this act, and the governor shall forthwith issue his proclamation, declaring under this act that the charter of such delinquent domestic corporation will be forfeited and the right of such foreign corporation to do business in this state will be forfeited unless payment of such license-tax, together with the penalty for such delinquency, as hereinbefore provided, be made to the secretary of state on or before the hour of four o'clock P. M. of the thirtieth day of November next following.

"Section 4. Said proclamation shall be filed immediately in the office of the secretary of state, and said secretary of state shall immediately cause a copy of said proclamation to be published in one issue of each of two daily newspapers to be selected by the governor.

"Section 5. At the hour of four o'clock P. M. of the thirtieth day of November each year the charters of all delinquent domestic corporations which have failed to pay the said license-tax, together with said penalty for such delinquency, shall be forfeited to the state of California, and the right of all delinquent foreign corporations to do business in this state which have failed to pay said license-tax, together with the penalty for such delinquency, shall be likewise forfeited. . . .

"Section 7. All educational, religious, scientific and charitable corporations, and all corporations which are not organized for pecuniary profit, are exempt from the provisions of this act.

"Section 8. On or before the thirty-first day of December of each year the secretary of state shall make a list of all domestic corporations whose charters have been so forfeited and of all foreign corporations whose right to do business in this state has been so forfeited, and shall transmit a certified copy thereof to each county clerk in this state, who shall file the same in his office.

"Section 9. It shall be unlawful for any corporation, delinquent under this act, either domestic or foreign, which has not paid the license-tax or fee, together with the penalty for such delinquency, as in this act prescribed, to exercise the powers of such corporation, or to transact any business in this state, after the thirtieth day of November next following the delinquency. . . ."

Section 10 makes the directors or managers in office of a corporation whose charter is so forfeited, the trustees of the corporation and stockholders or members, to settle up the affairs of the corporation.

Section 10b is as follows: "At the time of filing a certified copy of articles of incorporation of any corporation when filed on or between the first day of July and the following first day of December in any year, there shall be paid, in addition to all other fees required by law to be paid to secretary of state, the sum of twenty dollars, which shall be received and license receipt issued in full of the license-tax payable under this act, for the then current year."

Certain questions as to the proper construction of this act are involved by this application.

We are satisfied that the act must be construed as imposing the duty on all domestic corporations (excepting educational, religious, scientific, and charitable corporations, and all corporations which are not organized for pecuniary profit) to pay the so-called "tax," regardless of whether they actually transact or attempt to transact business in the state. Section 2, the section prescribing this duty, is plain and explicit in this regard. "It shall be the duty of every corporation incorporated under the laws of this state, and of every foreign corporation now doing business, or which shall hereafter engage in business in this state, to procure annually from the secretary of state a license authorizing the transaction of such business in this state, and shall pay therefor a license-tax as follows:"

The words "now doing business, or which shall hereafter engage in business in this state" are, of course, referable only to the words "every foreign corporation." A distinction is thus clearly made between domestic and foreign corporations in the matter of the duty imposed, which, in view of other provisions of the act, is unexplainable on any other theory than that the doing of business is immaterial so far as a domestic corporation is concerned. If such distinction had not been intended it would have been the natural and ordinary course to have followed substantially the form used in section 1, by prescribing that any corporation "heretofore or hereafter incorporated under the laws of this state or of any other state" doing or which shall hereafter engage in business in this state, etc., or the form used in section 9, by providing that every corporation, "either domestic or foreign" now doing business, or which shall hereafter engage in business in this state, etc., shall obtain a license, etc. The provision that the license thus to be obtained shall authorize the transaction in this state of "business" or "such business," does not detract from the force of the preceding portion of the section, which, in terms, requires every domestic corporation to obtain such a license and pay the amount prescribed therefor, whether or not it transacts business. The view that the act contemplated the imposition of this burden on every domestic corporation, regardless of whether or not it transacts business in the state, is, we think, more consistent with the whole frame of the act than would be the view that it was intended simply to impose a tax on the transaction of business in the state by any corporation. The title in no way indicates the imposition of any charge upon the carrying on by a corporation of any business or occupation, excepting so far as the use of the words "license-tax" in designating the burden imposed may so indicate. It is simply "an act relating to revenue and taxation, providing for a license-tax upon corporations," etc. The words "license-tax" used with reference to corporations exclusively mean no more necessarily than a charge of some kind imposed upon them solely for their corporate privilege, and as here used simply import a charge, for purposes of revenue it may be conceded, upon "corporations" generally, that is upon all corporations so far as it was within the power of the legislature to impose the charge. Again, we find it provided in

section 10b, that "at the time of filing a certified copy of the articles of incorporation of any corporation, when filed on or between the first day of July and the following first day of December in any year, there shall be paid, in addition to all other fees required by law to be paid to secretary of state, the sum of twenty dollars, which shall be received and license receipt issued in full of the license-tax payable under this act, for the then current year." As the statute was at the time of this enactment, the "tax" prescribed for all corporations was twenty dollars per annum. A foreign corporation had no right to do business in this state without filing a certified copy of its articles of incorporation with the secretary of state (Stats. 1901, p. 108), and the filing of such a copy by a domestic corporation was a condition precedent to the issuance of the certificate of incorporation. (Civ. Code, sec. 296.) It thus appears very clearly that it was the intention of the legislature that the "tax" should be paid by every corporation a certified copy of whose articles of incorporation was on file in the office of the secretary of state. This construction is still further supported by the provisions of section 3. The secretary of state is to report to the governor a list of all corporations that are delinquent under section 2, and the governor is to act solely on such report. No method is provided by which the secretary of state can ascertain which of the many thousand corporations in this state are actually engaged in business in this state under its articles, and there is no intimation in the act that he is to make any such investigation. It seems obvious that the intention was that he should act upon the records of his office showing the corporations that were in fact authorized to do such business, and that all corporations so authorized were liable, and should be reported to the governor if they failed to pay the tax, any foreign corporation so authorized being engaged in business in this state within the meaning of the act, even if it failed to actually transact business. Any other construction would render the act absolutely worthless, so far as its practical effect is concerned, and certainly we are not to attribute to the legislature an intention that would bring about such a result, unless that intention is plain. It may be conceded that the intent to impose this charge on all domestic corporations and foreign corporations whose articles of incorporation are on file in the

office of the secretary of state, regardless of whether they actually do the business they are authorized to do by such articles, might have been more clearly and concisely expressed, but we think it obvious from a consideration of the whole act that such was undoubtedly the intent, and that such intent has been sufficiently expressed.

The next question to be considered in regard to the construction of the act is whether under its provisions, a failure on the part of a domestic corporation to comply with its provisions by paying the charge imposed thereby for any year by four o'clock P. M. of the thirtieth day of November of that year, *ipso facto* works a forfeiture of its charter. The contention of plaintiff on this point is that the act merely states the conditions under which the charter is liable to forfeiture, and that the forfeiture before becoming effective must be established by the decree of a court of competent jurisdiction in some proceeding brought for that purpose. It is, of course, admitted that the only question in this connection is one of legislative intent. All the cases agree upon the proposition that although a forfeiture at common law does not operate to divest the title of the owner until by a proper judgment in a suit instituted for that purpose the rights of the state have been determined, a statute prescribing a forfeiture may be self-executing. Upon this point the language of the act is so clear and unmistakable in meaning, that we should be obliged to hold that it was intended that such failure should *ipso facto* work a forfeiture even if the result thereof should be, as claimed, that the act so providing must be held unconstitutional on the ground that it violates the due process of law clauses of the federal and state constitutions. We concede the claim that the act should be construed against such *ipso facto* forfeiture if the language used is fairly susceptible of such interpretation, but we are satisfied that it is not so susceptible. As we have seen, the act, after imposing the specific charge, provides that it shall be paid between July first and four o'clock P. M. of September first of the year for which it is due, that at the last mentioned time a penalty of ten dollars for delinquency shall accrue (sec. 2), that the secretary of state shall, on or before September fifteenth in each year report to the governor a list of all delinquent corporations, whereupon the governor shall issue his proclamation declaring "that the charters of

such delinquent corporations *will be forfeited* . . . unless payment of said license-tax, together with the penalty for such delinquency, . . . be made to the secretary of state on or before the hour of four o'clock P. M. of the thirtieth day of November next following," that a copy of such proclamation shall be immediately published by the secretary of state in one issue of each of two daily newspapers to be selected by the governor (sec. 4), that *"at the hour of four o'clock* P. M. *of the thirtieth day of November each year* the charters of all delinquent domestic corporations which have failed to pay the said license-tax, together with said penalty for such delinquency, *shall be forfeited to the state of California"* (sec. 5), and that on or before the thirty-first day of December of each year the secretary of state shall make "a list of all domestic corporations *whose charters have been so forfeited."* (Sec. 8.) The language used is irreconcilable, under the decisions in this state, with any other theory than that of *ipso facto* forfeiture, and the whole frame of the act is in support of this theory. In *Los Angeles Ry. Co.* v. *Los Angeles,* 152 Cal. 242, [125 Am. St. Rep. 54, 92 Pac. 490], the latest case on this subject, the provision under consideration was that portion of section 502 of the Civil Code relating to street railroad corporations, providing that "a failure to comply with either of the foregoing provisions of this section, or with either of the provisions of the ordinance granting said right of way, *works a forfeiture* of the right of way, and also of the franchise," etc. It was held, Chief Justice Beatty speaking for the court, that the words italicized made the statute self-executing, and it was said: "A judgment declaring and enforcing a forfeiture does nothing more than work a forfeiture, and when a breach of condition works a forfeiture there is no office for a judgment to perform, except perhaps to supply conclusive evidence of the fact—evidence which may in certain contingencies be useful, though not for all purposes essential." In *Oakland etc. R. R. Co.* v. *Oakland etc. R. R. Co.,* 45 Cal. 365, [13 Am. Rep. 181], the provision was "that if the provisions of this act are not complied with, then the franchise and privileges herein granted *shall utterly cease and be forfeited."* It was held that the statutory provision was self-executing, and that the mere failure to comply with the provisions of the act *ipso facto* worked a forfeiture. In *Upham* v. *Hosking,* 62 Cal.

250, 257, the provision was that if the said parties shall fail, etc., "then all the rights granted by this act shall become forfeited to the state," and it was held that this provision *ipso facto* worked a forfeiture. (See, also, *Borland* v. *Lewis,* 43 Cal. 569; *Town of Arcata* v. *Arcata etc. Co.,* 92 Cal. 639, 645, [28 Pac. 676].) Section 6 of the act, inserted by way of amendment to the original act on June 13, 1906 (Stats. 1906, p. 23), providing that any corporation which failed to pay the license-tax and penalty required by the original act, "may between the first day of July, 1906, and the hour of four o'clock P. M. of the first day of September, 1906, pay the said license-tax and penalty," together with the license-tax for the current year, and thereby "be relieved from the forfeiture prescribed" by such original act, is somewhat relied on as showing an intention that the failure to comply with the provisions of the act as to payment does not *ipso facto* work a forfeiture. The same claim could with equal force be made as to the amendment of this section, approved March 20, 1907 (Stats. 1907, p. 746), referring to amounts due and unpaid for the years 1905-6 and 1906-7. We think that these provisions can be reasonably construed in no other way than as being designed simply to relieve corporations that had failed to pay the charges for certain specified years from the effect of a forfeiture *that had already occurred,* upon condition that such corporations should then pay the amount of such charges. This is the necessary construction, whether or not the effect thereof be that under section 7 of article XII the provisions are void. The question of the validity of such provisions is not involved in this proceeding.

This brings us to a consideration of the question of the nature of the charge imposed by this act on the corporations affected by its provisions. It is earnestly claimed that, although denominated a "license-tax," it is a tax on "property" within the meaning of that word as used in section 1 of article XIII of our constitution. That section providing that "all property in the state, not exempt under the laws of the United States, shall be taxed in proportion to its value, to be ascertained as provided by law," it is claimed that, as this act taxes the property of the various corporations without regard to its value, it is void. In view of what we have already said, it is clear that the charge imposed by this act is a charge for

the privilege of being and continuing to exist as a corporation in the case of a domestic corporation, and a charge for the privilege of doing business as a corporation in this state in the case of a foreign corporation. It is settled in this state that the corporate franchise of a corporation, the right to be and exist as a corporation, may constitute valuable property of the corporation within the meaning of the term "property" as used in section 1 of article XIII, and that when it does constitute such valuable property, it is to be assessed and taxed "in proportion to its value" as any other property. (*Burke* v. *Badlam*, 57 Cal. 594; *Spring Valley W. W.* v. *Schottler*, 62 Cal. 69, 110; *Bank of California* v. *San Francisco*, 142 Cal. 276, [100 Am. St. Rep. 130, 75 Pac. 832].) The well-settled theory of our system of taxation of corporations is that everything that gives value to the shares of stock of a corporation must be assessed as property of the corporation under this section of the constitution (see *Crocker* v. *Scott*, 149 Cal. 575, 583, 589, [117 Am. St. Rep. 167, 87 Pac. 102]), and it is recognized that this corporate franchise constitutes one of such elements. As was said in *Bank of California* v. *San Francisco*, 142 Cal. 288, [100 Am. St. Rep. 130, 75 Pac. 837] : "It is the exercise of the right that gives *the value that our laws require to be taxed.*" (The italics are ours.) In the same case it was also said, speaking of the right or franchise of a corporation engaged in the business of supplying water or artificial light in municipalities, to use the public streets for their pipes, etc., conferred by section 19 of article XI of the constitution on any corporation or individual engaged at any time in such business: "While the generality of the grant does not deprive such rights of the character of franchises, they have value only so far as the exercise thereof contributes to the value of the capital of the corporation, and are precisely the same in this respect as the exercise of the corporate franchise." It is only in this sense that such a franchise has any value under our general laws relating to the formation of corporations. It is this value that our law requires to be ascertained and taxed as property. The provision of our constitution authorizing and requiring such assessment and taxation of the corporate franchise as a thing of value, cannot be held to preclude the state from imposing a charge for the privilege obtained from it of being and acting as a corpora-

tion. Under our law, there is really no difference in principle in this regard between a fee required to be paid to the state "as a condition or for the privilege of being a corporation," and an annual charge or excise upon the right to continue corporate existence. So far as such charge is a tax at all, it is a mere privilege or license-tax (Gray's Limitations on Taxing Power, secs. 54 and 55), the mere purchase price of the privilege. The state has the sole power to determine upon what conditions corporations may be created and exist within its borders. As put by Mr. Gray, "Corporate life is a creation of the state, and can be bestowed by the state upon such conditions as it chooses." (Sec. 54.) In section 1 of article XII of the constitution of 1879 it is provided: "Corporations may be formed under general laws, but shall not be created by special act. All laws now in force in this state concerning corporations, and all laws that may be hereafter passed pursuant to this section, may be altered from time to time or repealed." Under this reserved power it is not to be doubted that the legislature has the right to change the conditions upon which the privilege of being and acting as a corporation shall continue to exist, and that every corporation accepts its charter subject to the exercise of such power. Where the state possesses such reserved power as to corporations already created, that it may, for the purpose of increasing its revenue, prescribe as one of such conditions the annual payment of any amount it sees fit, cannot be questioned. (See *Home Ins. Co.* v. *New York*, 134 U. S. 599, [10 Sup. Ct. 593].) In New Jersey, where, as here, the corporate franchise was assessed as property according to its value, a statute provided, so far as material to the case before the court, that "all other corporations incorporated under the laws of this state, and not hereinbefore provided for, shall pay an annual license fee or franchise tax of one tenth of one per centum on all amounts of capital stock issued and outstanding." In holding the receiver in charge of an insolvent corporation liable to pay this charge, notwithstanding that the corporation's franchises were no longer a valuable asset and were not being used, the court of errors and appeals of New Jersey said:—

"Although the statute designates an imposition of this kind as a license fee or franchise tax it plainly is not a tax upon corporate franchises. In fact, strictly speaking, it is not a

tax at all, nor has it the elements of one.  It is in reality an arbitrary imposition laid upon the corporation without regard to the value of its property or its franchises and without regard to whether it exercises the latter or not solely as a condition of its continued existence.  The state in creating a corporation has the right to impose upon its creature such conditions as the legislature within constitutional limits may deem proper; and the acceptance by the corporation of the franchises, powers and privileges conferred upon it binds it to the performance of those conditions so long as it continues to remain in possession of those franchises, powers, and privileges, and the conditions themselves remain unrevoked by the legislature, and this is so without regard to the solvency or insolvency of the corporation, the value or want of value of its franchises or whether or not it is exercising them either by its officers and directors or through a receiver.  The sole test in determining its liability to comply with those conditions so long as they remain unrevoked is the existence or non-existence of the corporation."  (*In re United States Car Co.,* 60 N. J. Eq. 516, [43 Atl. 673].)

This quotation aptly states the real nature of the charge imposed by the act under consideration, and the grounds upon which the imposition is justified.  It is substantially the purchase price which the state has seen fit to charge for the continuance of the privilege of being and acting as a corporation. Although this privilege had already been granted to plaintiff and all other existing corporations, it had been granted subject to the power reserved by the state, to be exercised by general laws, of revocation, or the imposition of new charges therefor or new conditions upon which it might be enjoyed. The charge is in no sense a *tax upon the thing granted,* as is the tax imposed under section 1 of article XIII.  It is a mere license fee charged for the privilege, and is not a tax upon property at all, and the requirements of section 1 of article XIII of the constitution do not apply thereto.  (See, in addition to authorities already cited, *Jersey City etc. Co.* v. *United etc. Co.,* 46 Fed. 264; *State* v. *Pacific etc. Co.,* 99 Pac. (Or.) 427; *Chehalis Boom Co.* v. *Chehalis Co.,* 24 Wash. 135, [63 Pac. 1123]; *American Smelting etc. Co.* v. *People,* 34 Colo. 240, [82 Pac. 531]; *Marsden Co.* v. *Assessors,* 61 N. J. Law, 461, [39 Atl. 638]; *People* v. *Knight,* 174 N. Y. 478, [67 N. E.

65].) So far as the charge is imposed on foreign corporations, it is of the same general nature and rests upon the same basis. It is imposed as a condition of the grant of the privilege to do business in the state. "A foreign corporation can only come into a state and do business there by consent of the state; and the charge imposed by the state as a condition of that consent is not, ordinarily, a tax on property." (Gray's Limitations of Taxing Power, sec. 57; *Ashley* v. *Ryan,* 153 U. S. 436, [14 Sup. Ct. 865].)

Construing the act as we do, and in view of what we have already said, we see no force in the claim that it is void as being in conflict with the due process of law provisions of the federal and state constitutions, by reason of the fact that the failure of a domestic corporation to pay the charge imposed *ipso facto* works a forfeiture of its charter without any opportunity to the corporation to be heard. Practically, we have here simply the case of the grant by the state of a privilege upon condition subsequent, the privilege of being and acting as a corporation, which is to continue only upon the condition that the corporation shall annually pay to the state a certain specific amount therefor, on or before the thirtieth day of November at four o'clock P. M., it being provided that upon failure to pay at such time, the privilege shall *ipso facto* cease, provided, of course, that the acts required to be performed by the secretary of state and the governor shall have been performed in the manner required. This is not the taking of property without the due process of law, or, indeed, the taking of property at all within the meaning of the constitutional provisions, notwithstanding that the continuance of the privilege might be very valuable. By virtue of the terms of the statutes relating to the grant of the privilege and its continuance, the privilege ceases to exist upon the failure of the corporation to make the payment specified as a condition of its continuance. As said in *Los Angeles Ry. Co.* v. *Los Angeles Co.,* 152 Cal. 242, [125 Am. St. Rep. 54, 92 Pac. 490], where a breach of condition works a forfeiture of the thing granted, "there is no office for a judgment to perform, except perhaps to supply conclusive evidence of the fact" which itself works the forfeiture. (See, also, *Arcata* v. *Arcata etc. Co.,* 92 Cal. 639, 645, [28 Pac. 676].) It is obvious that there is no analogy between such a

case as is here presented and cases like *Chauvin* v. *Valiton,* 8 Mont. 451, [20 Pac. 658], where the statute provided for the summary seizure and sale in a manner held to be in violation of the due process provisions of any property used in carrying on a trade, occupation, or profession for which a license was required, to pay the amount due for the privilege of carrying on such trade, occupation, or profession. It may be conceded for the purposes of this case that the legislature has not the power to enact a law the effect of which would be to summarily deprive a corporation of other property owned by it, as a penalty for the non-payment of an amount due the state, without notice and some opportunity to the corporation to be heard. The property rights of a corporation are, of course, as sacred as those of the individual. But so far as the privilege to be and act as a corporation granted by the state constitutes property of the corporation, one of its elements is that it is held subject to such conditions as may lawfully be imposed by the state, and that it will cease to exist upon non-compliance with those provisions if the state has so declared. We need not consider, therefore, what kind of notice and hearing is essential in proceedings to enforce taxes by the seizure or sale of property of the taxpayer, or the question of the validity of such a provision as was involved in *King* v. *Mullins,* 171 U. S. 407, [18 Sup. Ct. 925], which was one contained in the constitution of West Virginia providing for the forfeiture of any land the owner of which had failed during a given period to have placed on the proper land book for taxation.

It should be unnecessary to say that it is only when the breach of condition prescribed by the act in fact occurs that there is any forfeiture, and that there can be no forfeiture as to any corporation exempted from the provisions of the act. Nothing is conclusively adjudicated or adjudicated at all against any corporation by any tribunal or officer. If a corporation exempted from the provisions of the act under the section exempting "all educational, religious, scientific and charitable corporations, and all corporations which are not organized for pecuniary profit" is nevertheless reported to the governor by the secretary of state as delinquent, and included in the proclamation of the governor provided for in section 3, there is no forfeiture as to such a corporation, and wherever its right to be and continue as a corporation is legally assailed that

fact could be made to appear. So if a corporation liable under the act had in fact paid the amount prescribed prior to the first day of September at four o'clock P. M., but was nevertheless included in such report and proclamation, there would be no forfeiture, for the simple reason that the event upon which the forfeiture depended had not occurred, and whenever its right to continue as a corporation is legally assailed that fact can be shown. (See *King* v. *Mullins,* 171 U. S. 404, 434, [18 Sup Ct. 925].) And if there be any objection to the validity of the act, either as to the whole act or in so far as it purports to affect any particular corporation, such corporation has ample opportunity to make such objection when an attempt is made to enforce the forfeiture declared thereby. If the objection be sustained, it will of course result that there has been no forfeiture.

The act is not in violation of section 1 of article III of the constitution, providing that no person charged with the exercise of powers properly belonging to one of the three departments of the state, the legislative, executive, and judicial, shall exercise any functions appertaining to either of the others, except as in the constitution provided. The point in this connection is that the secretary of state, an executive officer, is given the judicial power to determine whether any corporation which has failed to pay the charge, is within or without the exception mentioned in section 7 of the act. He is given no such power, within the meaning of the constitutional provision. He is simply called upon to report to the governor, with a view to the making of the proper proclamation of the latter officer, a list of the corporations which, according to the records of his office, have not paid the charge imposed upon them by the act. This proclamation, it will be remembered, is practically a notice to delinquent corporations, advising them that unless the charge together with the penalty for delinquency is paid at the time designated by the statute, their charters will be forfeited. While the secretary of state must exercise his judgment in determining which of the corporations whose articles are on file come within the description given in section 7, purely for the purpose of determining which shall be included in the list he is required to make, he does this as a mere incident to the exercise of a purely ministerial function, and is not making a determination that is

binding on any corporation. (See *People* v. *Hayne,* 83 Cal. 111, [17 Am. St. Rep, 211, 23 Pac. 1]; *In re Stevens,* 83 Cal. 322, 332, [17 Am. St. Rep. 252, 23 Pac. 379]; *People* v. *Board of Education,* 54 Cal. 375; *Robinson* v. *Kerrigan,* 151 Cal. 49, [121 Am. St. Rep. 90, 90 Pac. 129]; *Owners of Lands* v. *People,* 113 Ill. 296, 309.)

We are unable to see any force in the objection made by *amici curiæ* that the act is in conflict with section 11 of article I of the constitution, in that it does not operate uniformly upon all the corporations to which it is applicable, in that it imposes different penalties upon domestic and foreign corporations for non-payment of the charge. The California corporation forfeits its charter, while the foreign corporation forfeits only the right to do business in the state. As to each, the state takes away all that it has given, and all that it can take away. The operation of a law is none the less uniform because it operates differently upon different classes, provided there be a reasonable basis for the classification and for a different treatment of the various classes. There is such a reasonable basis here. The difference in the power of the state as regards domestic and foreign corporations furnishes a rational and proper basis for providing these different penalties in cases of delinquency by the two classes of corporations.

The act is not in conflict with section 15 of article XII of the state constitution, which provides that "no corporation organized outside the limits of this state shall be allowed to transact business within this state on more favorable conditions than are prescribed by law to similar corporations organized under the laws of this state." The conditions prescribed upon which corporations are allowed to transact business within this state are absolutely the same as to both classes, domestic and foreign. Each is required to pay the same amount, and the time for payment is the same as to each.

We do not think that the case falls within the rule enunciated in *Ex parte Young,* 209 U. S. 123, [28 Sup. Ct. 441], to the effect that where the validity of a statute depends upon the existence of a fact which can be determined by a court only after investigation of a very complicated and technical character, a provision in the statute which imposes such severe penalties by way of fine and imprisonment for disobedience of its provisions, as to intimidate the parties affected thereby

CLV Cal.—42

from resorting to the courts to test its validity, practically prohibits those parties from seeking such judicial construction and denies them the equal protection of the law. It is claimed that the provision for a forfeiture of the corporate charter of a domestic corporation for non-payment of the charge imposed by the act is of such a nature as to bring it within the operation of this rule. The statutes under consideration in *Ex parte Young* were statutes fixing rates for the various railroad companies for the carriage of passengers and merchandise, and providing penalties by way of fine and imprisonment for a failure to comply therewith. It was claimed that the rates so fixed were too low to permit any return upon the investment and constituted an attempt to confiscate valuable property of the railroad companies, and that the law was therefore void. There was no opportunity to test the validity of the act except after violation thereof. The penalties imposed by the act for non-compliance were so enormous, it was held by the court, as to practically prevent any person from disobeying the statute and resorting to the courts to test its validity, in view of the possibility that the result of such investigation might be adverse and these enormous penalties be imposed. The court, however, said: "The distinction is obvious between a case where the validity of the act depends upon the existence of a fact which can be determined only after investigation of a very complicated and technical character, and the ordinary case of a statute upon a subject requiring no such investigation and over which the jurisdiction of the legislature is complete in any event." Regardless of other considerations, the case before us is clearly of the kind last mentioned in this quotation.

In our judgment, the act is not void for failure of the title to sufficiently express its subject (Const., art. IV, sec. 24). As is said in *Ex parte Liddell,* 93 Cal. 633, [29 Pac. 251]: "The object of the provision is to prevent legislative abuse—to prevent the passage of acts bearing deceitful and misleading titles. It is intended to protect the members of the legislature as well as the public against fraud; to guard against the passage of bills the titles of which give no intimation to the members of the legislature or to the public of the matters contained therein. . . . To prevent deception by the inclusion of matters incongruous with the subject specified in the title. If the title contains a reasonable intimation of the matters under

legislative consideration, the public cannot complain." These objects were fully subserved by the title of this act, "An act relating to revenue and taxation, providing for a license-tax upon corporations, and making an appropriation for the purpose of carrying out the objects of this act." This obviously indicated the imposition of a charge of some kind upon corporations as such, and there was nothing in the language used reasonably tending to induce the belief that the act was confined to corporations actually engaged in the transaction of business. As we have heretofore said herein, the words "license-tax" used with reference to corporations exclusively mean no more necessarily than that a charge of some kind is imposed upon them solely for their corporate privilege. It was not necessary to state in terms in the title that it was an act "amending the charters of corporations." Every new general law affecting corporations necessarily amends such charters to the extent that it operates upon them differently from existing laws. The title, we think, measures fully up to the requirements of our constitutional provision, as the same are declared in *Ex parte Liddell.* (See, also, *Deyoe* v. *Superior Court,* 140 Cal. 476, 488, [98 Am. St. Rep. 73, 74 Pac. 28].)

What we have said substantially covers all of the points that have been made against the validity of the act.

The demurrer to the petition is sustained and the proceeding dismissed.

Sloss, J., Shaw, J., Lorigan, J., and Melvin, J., concurred.