[S. F. No. 5200. In Bank.—July 7, 1909.]

AZRO N. LEWIS and GEORGE W. LEWIS, as Trustees, and AZRO N. LEWIS, Individually, Petitioners, v. CHARLES F. CURRY, Secretary of State, and MILLER & LUX (a Corporation), Respondents.

CORPORATION—FAILURE TO PAY STATE LICENSE-TAX—FORFEITURE—DOMESTIC CORPORATION NOT ENGAGED IN BUSINESS.—*Kaiser Land and Fruit Co.* v. *Curry*, 155 Cal. 638, approved, to the effect that the act (Stats. 1906, p. 22), imposing a state license-tax on domestic corporations organized for pecuniary profit, and providing for a forfeiture of the charter of delinquent corporations, is valid, self-executing, and applicable to such corporations, although they may not be actually engaged in transacting business.

ID.—CORPORATION FORMED TO CLOSE UP BUSINESS OF FIRM—ORGANIZA-
TION FOR PECUNIARY PROFIT—CESSATION OF BUSINESS—TRANSFER
OF ASSETS TO ANOTHER CORPORATION.—A domestic corporation
formed by persons interested in the assets of a previously existing
partnership which had been dissolved by the death of one of the
partners, and organized for the purposes of taking over the firm
property, with power to acquire the property of the firm, to dispose
of the same as soon as it could be done without loss, to divide the
proceeds among the stockholders, and, in the mean time, in order
to preserve the value of the property, to carry on the business for-
merly conducted by the firm, and in the same manner, and to divide
the net profits of the business among the stockholders annually as
dividends, is organized for pecuniary profit, and is liable to the pay-
ment of a state license-tax, notwithstanding it has ceased to carry
on business, and has transferred its assets to a foreign corporation
organized for similar purposes, which has paid the license-tax re-
quired of foreign corporations doing business in this state.

ID.—DOUBLE TAXATION—CHARGE EXACTED AS CONDITION OF CORPORATE
EXISTENCE.—The exaction of the payment of the state license-tax
by such domestic corporation as well as by the foreign corporation
is not double taxation. The charge is imposed not alone for the
doing of business, but as a condition for the corporate privilege and
authority to do business, and must be paid by the California cor-
poration as a condition of continued corporate existence, regardless
of whether any business is done by it or not.

ID.—PROCLAMATION OF DELINQUENCY—CLASSIFICATION OF CORPORATIONS.
—The proclamation required by the act to be issued by the gov-
ernor declaring what domestic and foreign corporations are delin-
quent in the payment of the state license-tax, need not specifically
designate which of the corporations named in the proclamation are
domestic and which are foreign. A designation of each corporation,
whether foreign or domestic, by its true corporate name is sufficient.

ID.—MEANING OF WORDS "FORTHWITH" AND "IMMEDIATELY."—There is
no precise definition, so far as time is concerned, of the words
"forthwith" and "immediately," as used in a statute. In every
case the meaning depends upon the circumstances of the case and
the act to be performed.

ID.—TIME OF REPORT AND FILING AND PUBLICATION OF PROCLAMATION.—
The requirements of the act that the secretary of state shall, on or
before the fifteenth day of September, report to the governor a list
of all delinquent corporations, that the governor shall "forthwith"
issue his proclamation of delinquency, that the same shall be "imme-
diately" filed in the office of the secretary of state, and that he shall
"immediately" cause it to be published in two daily newspapers of
the state, are sufficiently complied with where there were, at most,
but two business days between the date of the report and the date
of the issuance of the proclamation, and a like period thereafter
before the ensuing publication.

APPLICATION for a Writ of Mandate directed to the Secretary of State of the State of California.

The facts are stated in the opinion of the court.

Charles S. Wheeler, for Petitioners.

U. S. Webb, Attorney-General, R. C. Van Fleet, and Edward F. Treadwell, for Respondent.

Joseph Slye, and Chas. W. Kitts, for Intervener.

SHAW, J.—The respondent, Miller & Lux, was duly and regularly incorporated under the laws of California in the year 1897. It did not pay to the state of California the state license-tax for the year 1907, which the law requires to be paid annually by corporations organized under the laws of this state. The petitioners are stockholders of said corporation and, as such, on behalf of said corporation, they tendered to the secretary of state the amount due the state on account of such tax for the year ending June 30, 1909. The secretary refused to receive the money on the ground that the corporation had forfeited its charter by its failure to pay the tax for the year 1907. The present proceeding is an application to this court for a writ of mandate to compel the secretary of state to receive such license-tax, either from said corporation, or from the petitioners as stockholders thereof.

An answer was filed on behalf of the respondent Miller & Lux. It alleges that the managing officers of said corporation refused to pay the state license-tax of said corporation which became due on July 1, 1907, intending thereby to cause a forfeiture of its corporate charter and the dissolution of the corporation; that thereupon, as the law provides, the secretary of state reported said failure to the governor who, on September 18, 1907, duly issued his proclamation that said corporate charter would be forfeited, unless such tax were paid on or before November 30, 1907; that the tax was not paid and that, consequently, said charter became forfeited, whereupon the directors of the corporation took charge of its property as trustees, under the authority given by section 400 of the Civil Code, and that they are proceeding with the settlement of its affairs. The answer purports to be filed by said

trustees of the corporation, as trustees of a dissolved corporation. The secretary of state ·has submitted the case upon a general demurrer to the petition. Melissa A. Potter, a stockholder of the Miller & Lux corporation, has intervened and filed an answer giving a full history of the corporation and of the facts leading to its dissolution, and praying that the writ be denied. The facts are all admitted.

The statute expressly provides for the forfeiture of the charters of all domestic corporations at four o'clock P. M. on November 30th of each year, in all cases where there has been a failure to pay the annual charges required by law and a due report of delinquents and proclamation thereof by the governor, and it further provides that it shall be unlawful for any such corporation thereafter to do any corporate business. (Stats. 1906, p. 22.) It is conceded that if this law is valid, self-executing, and applicable to the Miller & Lux corporation, then the secretary of state has no authority and is under no obligation to receive further state license-taxes from or on account of that corporation, that his refusal to accept the tax was justifiable and that the writ of mandate should not issue.

A number of objections are raised to the validity of the law. We presume it will be admitted that if it is wholly invalid, no tax became due and the secretary could not be compelled to receive for the state that which is not due. Admitting its validity, so ·far as it imposes an annual tax or charge, counsel for petitioners advance various reasons against the validity and effect of the provision declaring the forfeiture of the charters of delinquent corporations, and against its application to the particular corporation, Miller & Lux. The case of *Kaiser Land & Fruit Co.* v. *Curry,* 155 Cal. 638, [103 Pac. 341], was pending before this court at the time the present case was submitted. It involved, with three exceptions, the same questions as are here presented. In the consideration of that case the briefs and arguments in this case were used. The points raised there are fully stated and treated in the opinion filed in that case, and the petitioners' contentions, so far as they are identical with those made here, are declared to be untenable. We refer to that opinion for a full statement and disposition of those questions. We will consider here only the questions peculiar to this case.

1. It is claimed that Miller & Lux is not a corporation for pecuniary profit, and, hence, that it is not subject to the operation of the law. Section 7 of the statute declares that "All educational, religious, scientific and charitable corporations, and all corporations which are not organized for pecuniary profit, are exempt from the provisions of this act."

The following facts show the purpose, object, and powers of said corporation. There was formerly a partnership between Henry Miller and Charles Lux, known as "Miller & Lux." It possessed vast properties in California and other states. Lux died and his estate, including his interests in said firm, was ready for distribution by the probate court. The distributees were numerous and the property of the firm was of such character and its business so large and complicated, that it was believed that it would cause serious pecuniary loss and injury to all interested parties, and that it would be impracticable, also, to undertake to carry it on by so many persons as partners, and that it would involve a great sacrifice of its actual value to attempt to sell the property and distribute the proceeds, either in the administration proceedings then pending, or in a subsequent action for partition. To meet this condition the plan was conceived of forming a corporation, conveying and transferring to it all the property of said firm and dividing the corporation stock among the distributees and the surviving partners in proportion to their interests in the firm and in the estate of Lux. The respondent corporation was formed accordingly, under the name of "Miller & Lux," and the plan was carried out in all details. Its articles gave it power to acquire the property of said firm, to dispose of the same as soon as it could be done without loss, to divide the proceeds among the stockholders, and, in the mean time, in order to preserve the value of the property, to carry on the business formerly conducted by the said firm, and in the same manner, and divide the net profits of the business among the stockholders annually as dividends. (See *Baldwin* v. *Miller & Lux,* 152 Cal. 480, [92 Pac. 1030].)

We have no doubt that this was as much a corporation for pecuniary profit, in contemplation of law, as if its sole object had been to carry on the business and distribute the earnings as dividends. The fact that it was to take and hold the property as trustee and sell the same and distribute the proceeds

among the former owners does not make it any the less a corporation for pecuniary profit. The main object of the entire scheme which led to its organization was to promote, preserve, and protect the property interests of its stockholders, by preventing the sacrifice thereof which the ordinary processes of law would entail. Its purpose and object was wholly of a pecuniary nature and its powers were designed to either increase the property interest of its stockholders, or to prevent depreciation thereof. It would be immaterial, where such is the case, whether the corporation was required by its articles to declare direct dividends or not. A mere holding corporation which its stockholders formed because they believed it to be for their pecuniary advantage to do so and with that object in view, would be, in the sense of the law, a corporation organized for pecuniary profit.

2. It is claimed that the tax had been in fact paid, and, hence, that there could be no legal forfeiture. This point involves some facts not heretofore stated. In 1905, in pursuance of an agreement made between the holders of more than two thirds of the stock of the corporation, "Miller & Lux," said corporation being also a party thereto, another corporation was formed under the laws of the state of Nevada, under the name and style of "Miller & Lux, Incorporated." This corporation was formed, as its articles declare, for the purpose of acquiring all the property and assets of the California corporation, "Miller & Lux," carrying on all the business and performing all the functions, duties, and obligations of that corporation, and generally to take its place in the affairs for which it was organized. The California corporation immediately afterwards assigned, conveyed, and transferred all its property and assets to "Miller & Lux, Incorporated" and ceased thereafter to do business as a corporation, the business and purposes which it was organized to do and perform being thenceforward done and performed by "Miller & Lux, Incorporated." The Nevada corporation did this business chiefly in this state, and it has regularly every year, paid the license-tax required of foreign corporations doing business in this state, by the statute under consideration, the amount being the same as in the case of California corporations having the same authorized capital stock. Its authorized capital stock was the same as that of the California "Miller & Lux" corporation.

The argument that this payment by the Nevada corporation excuses the California corporation from paying the charge imposed by the statute as a condition for its continued corporate existence, or that it operates as a payment or satisfaction of the demand in favor of the state upon the California corporation for such tax, appears to us to be without force. It is based chiefly on the theory that the tax is imposed upon California corporations in consideration of the actual transaction of business, that there should be, and was intended to be, but one tax upon the right to do or the doing of the same business, that as the Nevada corporation has transacted all the business and the California corporation none, the payment by the Nevada corporation for the privilege of doing it, or for the transaction of it, completely satisfies the law and discharges both obligations. This argument is completely refuted by the conclusion reached in *Kaiser etc. Co.* v. *Curry,* 155 Cal. 638, [103 Pac. 341], that the charge is imposed not alone for the doing of business, but as a condition for the corporate privilege and authority to do business, and that it must be paid by a California corporation as a condition of continued corporate existence, regardless of whether any business is done by such corporation or not. There is no double tax. The Nevada corporation is charged as a condition of its right to do business here; the California corporation as a condition of its right to continue its corporate existence here or elsewhere.

3. It is also contended that the governor's proclamation and the subsequent publication thereof were defective and ineffectual. The statute provides that when the secretary of state, on or before September 15th, shall have reported to the governor a list of all corporations which are delinquent in the payment of the tax, "the governor shall forthwith issue his proclamation declaring under this act that the charters of such delinquent domestic corporations will be forfeited and the right of such foreign corporations to do business in this state will be forfeited unless payment of such license-tax" be made on or before four o'clock P. M. of the following thirtieth day of November. We are not advised as to the date of the making of the report to the governor by the secretary of state in the year 1907, but as the 15th of September of that year was Sunday, we may presume that it was made

either on the Saturday preceding or the Monday following that date. The governor's proclamation was issued on September 18, 1907. It recited the report of the list of delinquent corporations by the secretary of state, named a large number of corporations as those so reported, and then proclaimed that unless the payment was made within the time allowed by law, the "charters of domestic corporations of this state above mentioned will be forfeited, and the right of foreign corporations above mentioned to do business in this state will be forfeited." There was nothing in the proclamation to show which of the corporations named in the proclamation were domestic and which were foreign, except that after stating in the list a number of corporations, the sub-heading "Foreign. A-Z" occurs, followed by a number of additional names of corporations. There is nothing in the act which requires that the proclamation shall distinguish between domestic and foreign corporations. It is possible that there may be corporations of another state having the same names as corporations of this state. In such a case a stockholder could not know with certainty from the proclamation alone, whether the named corporation was the one in which he was interested or not. But he would have no difficulty in ascertaining the truth, if he was sufficiently interested to inquire. The contingency is not of such frequent occurrence as to make it of great importance, or to require us to hold such proclamation void unless it gives a more particular description of the respective corporations than that given by their true corporate name. Such designation is sufficient in any ordinary legal document, and even in proceedings *in invitum* for the levy and collection of taxes. We see no substantial reason for greater certainty here.

It is also claimed that the proceedings were not carried on with sufficient dispatch. Section 3, above quoted, requires the governor to issue the proclamation "forthwith," upon receiving the secretary's report. Section 4 requires that the proclamation shall be filed in the office of the secretary of state "immediately" and that the secretary shall "immediately" cause it to be published in two daily newspapers of the state. The publications of the proclamation were made on September 21st in newspapers in Oakland and Los Angeles. In our opinion the proceeding was sufficiently ex-

peditious. There is no precise definition, so far as time is concerned, of the words "forthwith" and "immediately." In every case the meaning depends upon the circumstances of the case and the act to be performed. The law in question manifestly contemplates a speedy performance of the respective acts up to the publication of the proclamation, and any considerable delay therein might prevent an effectual forfeiture. But here there were, at most, but two business days between the date of the report and the date of the issuance of the proclamation and a like period thereafter before the ensuing publication. The governor presumably has many duties to perform and a delay for that space of time could not be said to be unreasonable. As to the publication, it being necessary to make it in two newspapers of the state, and it being a reasonable interpretation of the act to allow the publication in different parts of the state, some time must necessarily elapse between the time of the filing of the proclamation with the secretary of state and the time of the issuing of the first publication thereof. A period of three days for this purpose indicates that the business was done with reasonable speed. (See *Anderson* v. *Goff*, 72 Cal. 73, [1 Am. St. Rep. 34, 13 Pac. 73].)

These comprise all the points urged by the argument except those already considered in *Kaiser etc. Co.* v. *Curry*, 155 Cal. 638, [103 Pac. 341].

The petition for a writ of mandate is denied, and the writ discharged.

Angellotti, J., Melvin, J., Sloss, J., Henshaw, J., and Lorigan, J., concurred.