In re DOUBLE STAR BRICK CO.

(District Court, N. D. California, First Division. February 5, 1913.)

No. 7316.

BANKRUPTCY (§ 71*) — PERSON SUBJECT TO ADJUDICATION — CORPORATIONS — DISSOLUTION.

That a California corporation had forfeited its franchise for nonpayment of the license tax, as provided by California Act March 20, 1905 (St. 1905, p. 493), as amended by St. 1906, p. 22, and St. 1907, pp. 664, 745, did not deprive the bankruptcy court of jurisdiction to administer its estate; the primary purpose of bankruptcy proceedings being the distribution of the debtor's property, the court taking hold of the res rather than the person of the bankrupt.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 17, 86; Dec. Dig. § 71.*]

In Bankruptcy. In the matter of bankruptcy proceedings of the Double Star Brick Company. Application of Thomas B. Fernandez to set aside adjudication. Denied.

An application is made by creditors for the vacation of an order adjudicating the Double Star Brick Company a bankrupt. The order was entered January 23, 1912, in an involuntary proceeding, after written admission of insolvency, signed in the name of the brick company by three of its directors, one of whom was also its president, and another its treasurer, had been filed. The salient facts may be briefly stated as follows: The brick company was organized as a corporation pursuant to the laws of California on the 15th day of April, 1907. Under the terms of an act of the Legislature of California, approved March 20, 1905, as amended (Stats. Cal. 1905, p. 493; 1906, p. 22; 1907, pp. 664, 745) it became its duty to pay a license tax for the year 1911. Having failed to make the required payment, its default in the premises was, on the 15th day of September, 1911, reported to the Governor by the Secretary of State, and thereupon the Governor issued a proclamation declaring that the corporation's charter would be forfeited unless such license tax were paid by November 30, 1911, which proclamation was filed in the office of the Secretary of State and duly published as required by law. The tax was never paid, and upon the assumption that the brick company had no existence as a corporation on December 23, 1911, when the involuntary petition was filed, or upon January 23, 1912, when the adjudication was made, it is contended that the bankruptcy court was and is without jurisdiction to administer the estate. It should be added that during the year elapsing between the date of the adjudication and the date of this application numerous proceedings had been taken in the administration of the estate, one of which at least was by the trustee against the present applicants, who appeared and submitted themselves to the jurisdiction of the court without objection.

The California statute (St. 1906, p. 24) relied upon, after providing that all corporations shall pay an annual license tax and prescribing the duties of the Secretary of State and the Governor in cases of default, is as follows: "Sec. 9. It shall be unlawful for any corporation, delinquent under this act, either domestic or foreign, which has not paid the license tax or fee, together with the penalty for such delinquency, as in this act prescribed, to exercise the powers of such corporation, or to transact any business in this state (California), after the thirtieth day of November next following the delinquency. * * *"

Section 404 of the California Civil Code is as follows: "The Legislature may at any time amend or repeal this part, or any title, chapter, article, or section thereof, and dissolve all corporations created thereunder; but such amendment or repeal does not nor does the dissolution of any such corporation, take away or impair any remedy given against any such corporation, its stockholders or officers, for any liability which has been previously incurred."

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

. W. S. Tinning, of Martinez, Cal., and R. C. Porter, of Los Angeles, Cal., for petitioner.

Daniel O'Connell, of San Francisco, Cal., opposed.

DIETRICH, District Judge (after stating the facts as above). In view of the fact that the applicant has presented his claim and has thus submitted the same to the jurisdiction of this court, and the further fact of his long acquiescence, it is a grave question whether his application does not come too late, and he is not estopped to raise the objection upon which he relies. In re Ives (D. C.) 111 Fed. 497; also 113 Fed. 911, 51 C. C. A. 541; In re Billings (D. C.) 145 Fed. 400. At least the application should not be granted unless it is clear that there is a want of jurisdiction of the subject-matter, and I am not satisfied that such is the case. It is to be admitted that in the decisions cited by the applicant (Kaiser Land & Fruit Co. v. Curry, 155 Cal. 642, 103 Pac. 341; Lewis v. Curry, 156 Cal. 99, 103 Pac. 493; Lewis v. Miller & Lux, 156 Cal. 101, 103 Pac. 496; Alaska Salmon Co. v. Standard Box Co., 158 Cal. 578, 112 Pac. 454) there are expressions strongly supporting the view that the forfeiture of the charter of a corporation under the act referred to operates to terminate its very existence, but it is to be borne in mind that no question like that here involved was under consideration. Very clearly the primary, if not the only, purpose of the statute was to take away from defaulting corporations the power to act as such corporations; their privilege to do business is withdrawn as a penalty for their failure to pay the license fee or tax. It certainly was not the intention of the Legislature to impose any penalty upon, or to destroy, the rights of creditors. Were it not for these expressions of the Supreme Court of the state, I should not hesitate to hold that the statute operates simply to render corporations incompetent to transact business.

Apparently the Double Star Bick Company was insolvent and had committed an act of bankruptcy, and its property had therefore become subject to the jurisdiction of this court for bankruptcy purposes, prior to the forfeiture of its character. The primary purpose of a bankruptcy proceeding is the distribution of the property of the debtor; the court takes hold of the res rather than the person.

While the California statute under consideration makes provision for trustees to represent the defaulting corporation in the preservation of its property for the benefit of any persons entitled thereto, no specific scheme is outlined for the administration or distribution of the estate. In the present case it is admitted that these trustees voluntarily appeared and submitted to the adjudication, and consented to a distribution of the estate under the provisions of the bankruptcy act.

. By section 8 of the Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 549 [U. S. Comp. St. 1901, p. 3425]), it is expressly provided that a proceeding shall not abate by reason of the death or insanity of the bankrupt. True there is no express provision for the administration of the estate of a deceased or insane person, where proceedings are not commenced prior to the death or insanity, and the jurisdiction of bankruptcy courts in such cases may be doubtful. But at least in involuntary proceedings I am inclined to think that an insane

person, though wholly incompetent in law, may be adjudged to be a bankrupt.

Perhaps still a better analogy to the present case is that of a partnership. It is familiar knowledge that under the Bankruptcy Act a partnership is deemed to be quite as much a legal entity as a corporation; the partnership estate is treated as distinct from that of the individual members of the partnership, and is so administered. But if the theory here urged is to be accepted, by parity of reasoning it must be held that a partnership may become insolvent and commit acts of bankruptcy, and thereupon the jurisdiction of the bankruptcy court may be defeated by the dissolution of the partnership, either through the voluntary agreement of the partners, or by reason of the death of one of them.

In view of these considerations I am decided to resolve such doubt as there is in favor of our jurisdiction and to retain control of the estate. To relinquish control now would give rise to many complications, and would be to the prejudice of those, who, with the knowledge, acquiescence, and apparent consent of the applicant, have incurred expense and delayed other action in reliance upon the validity of this proceeding.